Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 2155 | DATE | 11/9/2004 |
| CASE TITLE | Gates, et al. vs. Towery, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/22/2004 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' motion to supplement plaintiffs' request for class certification is granted. Enter Memorandum Opinion and Order. Plaintiffs' motion for class certification [19-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | NOV 1 0 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 38 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| RO | courtroom deputy's initials | 2004 NOV -9 PM 4:02 U.S. DISTRICT COURT | date mailed notice mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELTON GATES and LUSTER NELSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 04 C 2155 |
| ) | |
| Officer B. TOWERY, Star No. 8233, Officer ) | Judge Ruben Castillo |
| P. GALIARDO, Star No. 19174, Officer ) | |
| ECHOLS, Star No. 12329, Officer ) | |
| COLLIER, Star No. 18240, PHILIP CLINE, ) | |
| Superintendent of Police for the City of ) | |
| Chicago, and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elton Gates and Luster Nelson ("Plaintiffs") contend that Officers Towery, Galiardo, Echols, and Collier, Superintendent Cline, and the City of Chicago (collectively "Defendants") have a policy of issuing incomplete, false, and misleading receipts to arrestees whose property is taken for inventory purposes at the time of their arrest. (R. 31, Second Am. Compl., Count I ¶ 25(e) & Count II ¶ 25 (e).) They allege that this policy "is designed to prevent, delay, and impede the return of non-forfeitable property to the rightful owners." (*Id.*) Presently before the Court is Plaintiffs' motion for class certification, in which Plaintiffs ask the Court to certify the following class:

> [A]ll those persons who had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the arrestee was issued an inventory receipt when arrested; and e) the money has not been returned to the arrestee.[1]

---

[1] Plaintiffs state in their second amended complaint that the proposed class is limited to those persons who were arrested after June 26, 2001 and meet the above criteria. (R. 31, Second



(R. 29-1, Pls.' Mot. ¶ 2.) In their reply brief, Plaintiffs revise their initially proposed class definition to exclude arrestees whose property was inventoried in its original form as evidence. (R. 35, Pls.' Reply at 10.) For the reasons set forth below, we grant Plaintiffs' motion for class certification with modification.

## LEGAL STANDARDS

A party seeking certification of a class must demonstrate that the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of the class members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class as a whole (typicality); and (4) the representatives will fairly and adequately protect the class interests (adequacy). *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). Even if the proposed class meets the Rule 23(a) prerequisites, the moving party must demonstrate that the class satisfies at least one of the Rule 23(b) requirements as well. *Id.*; *see also Hispanics United of DuPage Cty. v. Village of Addison, Ill.*, 160 F.R.D. 681, 686 (N.D. Ill. 1995).

The Court has broad discretion to determine whether a proposed class meets the Rule 23 certification requirements. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). In making this determination, the Court recognizes that Rule 23(a) should be liberally construed to support its policy of favoring the maintenance of class actions. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). The Court also retains broad

---

Am. Compl. ¶ 26.)

2

power to modify the definition of a proposed class if it believes that the proposed definition is inadequate. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995); *Metro. Area Housing Alliance v. U.S. Dep't of Housing and Urban Dev.*, 69 F.R.D. 633, 638 n.7 (N.D. Ill. 1976).

## ANALYSIS

Plaintiffs assert that their proposed class meets all of the Rule 23(a) requirements and qualifies for certification under Rules 23(b)(2) and 23(b)(3). Defendants object to the certification of the proposed class on several grounds. In their response brief, Defendants raise two threshold issues: 1) whether Plaintiffs' claims in this matter are moot; and 2) whether the proposed class definition is sufficiently definite and manageable. Defendants also argue that we should deny class certification because the proposed class does not meet the Rule 23 typicality, adequacy, and commonality requirements. We will address each argument in turn.

### I. Mootness

Defendants argue that Plaintiffs lack standing to represent the proposed class because the case was mooted when the City of Chicago offered to return Plaintiffs' money before Plaintiffs filed their class certification motion. (R. 32, Defs.' Resp. at 2-5.) Article III of the Constitution confers jurisdiction on the federal courts over actual cases and controversies. *Jones v. Sullivan*, 938 F.2d 801, 805 (7th Cir. 1991). This Article III limitation underpins both standing and mootness jurisprudence, but the two inquiries differ in critical respects. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). To establish standing, a plaintiff must show that it has suffered an actual or imminent injury in fact that is concrete and particularized, that the injury is traceable to the challenged conduct, and that a favorable decision

3

would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). If a plaintiff lacks standing when a case is filed, the fact that the challenged activity is "capable of repetition yet evading review" cannot confer jurisdiction. *Friends of the Earth*, 528 U.S. at 191. The "capable of repetition yet evading review" exception does exist, however, when a defendant claims that a case has become moot after the action is filed. *Id.* at 190-91. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice . . . [i]f it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Id.* at 190 (internal quotation omitted). As a result, a defendant arguing that its voluntary actions have mooted a case "bears the formidable burden of showing that it is absolutely clear the allegedly wrong behavior could not reasonably be expected to recur." *Id.*

In the class action context, claims may become moot in certain situations where a named plaintiff's claims expire before a class is certified.[2] *Holstein v. City of Chi.*, 29 F.3d 1145, 1147 (7th Cir. 1994). Where the defendant offers to satisfy a named plaintiff's "entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake." *Id.* (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)). The offer of relief, however, must be complete: "obviously the rejection of an offer of less than the complete relief sought by a suit does not prove that there is no dispute between the litigants." *Griesz v. Household Bank, N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999). The claims of a plaintiff seeking injunctive relief from a purportedly unconstitutional

---

[2] On the other hand, if a class representative's claims become moot after a class is certified, the representative may nonetheless continue to represent the class. *Sosna v. Iowa*, 419 U.S. 393, 399-403 (1975).

4

government policy may become moot where the government voluntarily implements a new policy eradicating any reasonable expectation that the purportedly unconstitutional conduct will be repeated. *See Jones v. Bowman*, 120 F.R.D. 88, 91 (N.D. Ill. 1988). If a plaintiff receives all of the monetary and injunctive relief sought, a request for a declaratory judgment and attorney's fees alone will not provide a justiciable controversy. *See Alliance to End Repression v. City of Chi.*, 820 F.2d 873, 875-76, 878 (7th Cir. 1987).

In this case, Plaintiffs have requested numerous forms of relief, including the return of their money with interest, a judgment declaring that the alleged policy is unconstitutional, attorney's fees and costs, and an injunction preventing Defendants from continuing the purportedly unconstitutional practice.[3] (R. 31, Second Am. Compl. at 13-14.) While Defendants have brought forth evidence showing that they offered Plaintiffs the monetary relief they seek, (*see* R. 32, Defs.' Resp. at 4 & Exs. A-H), they have not asserted that they offered to discontinue the alleged practice that Plaintiffs challenge here. Indeed, Plaintiffs argue that the purportedly unconstitutional practice continues today. (R. 35, Pls.' Reply at 2.) If Defendants had offered not to engage in the purportedly discriminatory policy along with its offer to return Plaintiffs' money with interest, that may have mooted Plaintiffs' claims. *See Alliance to End Repression*, 820 F.2d at 877 (noting that if plaintiffs had sought an injunction to prevent particular government action, the litigation would have been "live" even after the plaintiffs received the monetary compensation sought). Because they have not addressed the underlying policy

---

[3] While Plaintiffs assert in their reply brief that they are entitled to damages, (*see* R. 35, Pls.' Reply at 5), their second amended complaint only requests damages in the form of "reasonable interest" on their money from the time of its seizure until the time it is properly returned, (*see* R. 31, Second Am. Compl. at 13-14).

5

challenged here, however, Defendants have neither offered all of the relief sought nor met their burden of showing that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. As a result, we find that Plaintiffs' claims are not moot.

## II.  Definiteness and Manageability

Defendants also argue that certification of Plaintiffs' proposed class is inappropriate because the class is inherently indefinite and unmanageable. (R. 32, Defs.' Resp. at 8-11.) There are two prongs to Defendants' argument. First, Defendants state that the proposed class is actually made up of two discreet classes that are incompatible with one another. (*Id.* at 8-9.) Second, Defendants argue that the proposed class definition must be sharpened to specify that: a) arrestees whose money has been returned previously are not included in the class; and b) those whose money was not inventoried in its physical form but reported as evidence to a criminal court are not included in the class. (*Id.* at 9-11.) In their reply brief, Plaintiffs accepted and adopted the two changes to the class definition that Defendants have proposed, so we need not address the second prong of the argument. (R. 35, Pls.' Reply at 10.) We note, however, that in order to conform to the allegations in Plaintiffs' second amended complaint, the class should be further modified to clarify that the class includes only those arrestees who never received notice that their property was ready for return despite the fact that Defendants issued inventory receipts representing that they would be so notified. (*See* R. 31, Second Am. Compl., Count I ¶ 25(b), Count II ¶ 25(b), ¶ 26.) With those points of clarification in mind, we will focus on whether Defendants have demonstrated that Plaintiffs' proposed class is so indefinite or unmanageable as to preclude certification.

A sufficiently definite class exists "if its members can be ascertained by reference to objective criteria." *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). The scope of the prospective class may be defined, for example, by reference to the defendant's conduct. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977). "A class description is insufficient, however, if membership is contingent on the prospective member's state of mind." *Gomez*, 117 F.R.D. at 397; *see also Hispanics United*, 160 F.R.D at 686. The class definition must be sufficiently precise to make it "administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).

Defendants argue that class certification is inappropriate here because Plaintiffs' proposed class definition actually is made up of two separate and distinct classes which are insufficiently definite for certification. According to Defendants, first there is "the signature class," which is made up of "arrestees whose due process rights were allegedly violated when they were told they had to secure the signature of the arresting officer in order to get return of money inventoried at the time of their arrests and who, when they attempted to secure that signature, were unable to do so." (R. 32, Defs.' Resp. at 6.) Second, there is the "notice class," which they argue is made up of "arrestees who were given inventory receipts for money inventoried at the time of their arrests . . . which stated that they would be given notice when the inventoried money was available for pick-up." (*Id.*) Defendants state that this second class of plaintiffs was allegedly "lull[ed] . . .into believing that their money was still not eligible for return" when they never received notice of their money's availability for pick-up. (*Id.*)

Defendants have attempted to create a class dichotomy based on the manner in which the

7

proposed plaintiffs reacted to receiving the allegedly unconstitutional inventory receipts. This dichotomy ignores that at the heart of this case is Defendants' alleged practice of issuing false or misleading inventory receipts to arrestees at the time of their arrest in order to improperly retain the arrestees' money. (R. 31, Second Am. Compl., Count 1 ¶ 25 & Count II ¶ 25.) The fact that different class members may have had distinct reactions to the allegedly false notice in the inventory receipts does not create a definiteness barrier. The class as proposed is easily defined by Defendants' conduct—their issuance of the purportedly unconstitutional receipts and failure to return confiscated money. The Court could resolve that issue on behalf of the entire class without delving into the individual class members' states of mind. We therefore find that the class as proposed in Plaintiffs' motion and modified in their reply brief is sufficiently definite for class certification purposes. *Rochford*, 565 F.2d at 978.

### III. Rule 23 Requirements

Having found that Plaintiffs have live claims and that their proposed class is sufficiently definite, we now turn to whether the class meets all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

#### A. Numerosity

As noted above, Rule 23(a)'s numerosity requirement states that a proposed class must be so numerous that joinder is impractical. "Where the class is large, the numbers alone are dispositive of the impracticability of joinder," and the Court need not consider other factors to determine whether the numerosity requirement is met. *Thillens, Inc. v. Community Currency Exchange Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983). Plaintiffs are not required to specify the exact number of class members as long as they have made a good faith estimate, and we are

entitled to make "common sense assumptions" in making the numerosity determination. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662-63 (N.D. Ill. 1996).

Plaintiffs have stated that the number of potential class members under the proposed definition exceeds one thousand, (R. 31, Second Am. Compl. ¶ 27), and could consist of "thousands, if not tens of thousands, of arrestees every year," (R. 29-2, Pls.' Mem. at 4). Clearly, joinder of this number of claims is entirely impractical. *See Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D. Ill. 1978) (noting that class exceeding 1,000 is plainly sufficient). We thus find that the proposed class easily meets the numerosity requirement.

### B. Commonality

Rule 23(a) also requires a showing of questions of law or fact common to the class. To satisfy this requirement, Plaintiffs must demonstrate that there is at least one common question of law or of fact. *Nat'l Org. for Women, Inc. v. Scheidler*, 172 F.R.D. 351, 360 (N.D. Ill. 1997). Where an on-going policy of unconstitutional activity is alleged as the gravamen of a complaint, "it makes no difference that a variety of specific activities are complained of or constitutional violations alleged." *Rochford*, 565 F.2d at 979; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992) (stating that factual variation among class members' grievances will not defeat class certification). Instead, it is sufficient for Plaintiffs to demonstrate that the claims arise from a common nucleus of operative fact. *Rosario*, 963 F.2d at 1017-18.

Plaintiffs state that there are at least eight questions of law and fact common to the proposed class. (R. 29-1, Pls.' Mot. ¶ 8.) The common issues include: 1) whether Defendants violated Plaintiffs' due process rights; 2) whether Defendants had a legal basis to retain

9

inventoried money after the conclusion of criminal charges; 3) whether Defendants have a policy which requires arrestees to secure the signature of the arresting officer before their money is returned; 4) whether the inventory receipt that is issued to arrestees is misleading; 5) whether Defendants fail to issue a notice that seized money is available to be returned to the arrestees; 6) whether Defendants' policy violates Plaintiffs' procedural due process rights by retaining property after criminal charges are resolved; 7) whether Defendants implemented and enforced their policy knowing that arrestees would be misled by the notice on the inventory receipt and knowing that the procedure was so burdensome that it would prevent most arrestees from reclaiming their property; and 8) whether Defendants created their policy to deter arrestees from recovering their property. (*Id.*) This litany of common questions suffices to demonstrate that the proposed class members' experiences arise from a common nucleus of operative fact.[4] *Rosario*, 963 F.2d at 1017-18.

Defendants nevertheless argue that the proposed class fails to meet the Rule 23 commonality requirement. Defendants argue that inherent in the proposed class is "a difficult, individualized determination: the matter of whose money has actually been inventoried." (R. 32, Defs.' Resp. at 11.) Defendants argue that some of the class members may have been arrested for property theft and therefore may not even be the rightful owners of the property inventoried upon their arrest. (*Id.* at 11-12.) Plaintiffs, however, have agreed to exclude from the class any arrestees whose property was inventoried as evidence at the time of their arrest. Also excluded from the proposed class are those arrestees whose property was subject to forfeiture proceedings.

---

[4] If it becomes clear as this case develops that this common nucleus of operative fact does not exist, we have discretion to amend the class definition to ensure that the commonality requirement is met. *Buycks-Roberson*, 162 F.R.D. at 328-29.

The proposed class consists of those arrestees to whom Defendants issued an inventory receipt stating that the property would be returned to the arrestee when available. The class would thus only include those individuals whom the Defendants recognized at the time of arrest as owners of the inventoried property. We therefore find that Defendants' concerns that the proposed class necessitates an individualized inquiry as to property ownership are unfounded.

Defendants also argue that we would need to make numerous individualized inquiries to determine why the arrestees who did not receive notice that their property was available failed to take steps to retrieve that property on their own.[5] (*Id.* at 12-13.) Similarly, Defendants argue that there are separate individualized issues pertaining to the plaintiffs who inquired about their property and were told to obtain an officer's signature but were unable to do so. (*Id.* at 14.) As stated above, the core issue in this case is not how potential plaintiffs individually responded to the allegedly unconstitutional notice. The issue is whether the Defendants have a practice of issuing inventory receipts which violate the due process rights of the proposed class members. Because the allegedly unconstitutional practice was applied to all of the members of the proposed class, the proposed plaintiffs' claims arise from the same nucleus of operative fact. *Hispanics United*, 160 F.R.D. at 681. The factual distinctions that may arise regarding class members' reactions to the allegedly unconstitutional policy does not preclude a finding of commonality. *See Rosario*, 963 F.2d at 1017-18.

C.  **Typicality**

Rule 23(a) states that the claims of the named plaintiffs must be typical of the claims of

---

[5] According to Defendants, many potential plaintiffs may have declined to seek return of their property out of shame or embarrassment. (*Id.*)

the proposed class. To meet this requirement, the named plaintiffs must show that their claims arise out of the "same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This requirement does not mean, however, that all plaintiffs must present identical factual circumstances. *Nat'l Org. for Women*, 172 F.R.D. at 361. Instead, "similarity of legal theory may control even in the face of differences of fact." *Hispanics United*, 160 F.R.D. at 689. The Rule 23 typicality requirement also allows for variance among the types of injuries suffered by class members. *Id.*

Defendants assert that Plaintiffs' claims are not typical of the claims of the proposed class because unlike some potential class members, Plaintiffs took affirmative steps to seek the return of their property after receiving the allegedly insufficient notice. (R. 32, Defs.' Resp. at 7.) Defendants have again merely cited a factual distinction in the possible reactions to the allegedly unconstitutional inventory receipts. Rule 23 does not require the named plaintiffs to show exact identity of fact within the class as a whole. *See Hispanics United*, 160 F.R.D. at 689. Plaintiffs have adequately shown that the legal theory that controls the claims of all proposed class members, including the named Plaintiffs, is that the inventory receipt they were issued by the Defendants violated their procedural due process rights. (R. 31, Second Am. Compl., Count I ¶ 25, Count II ¶ 25, ¶ 28.) We find that Plaintiffs have met their burden of demonstrating that their claims arise out of the same practice or conduct—Defendants' issuance of allegedly unconstitutional inventory receipts and failure to return seized property—and are based on the same legal theory—that Defendants' practice deprives the class of their due process rights. (R. 29-2, Pls.' Mem. at 6.) As a result, we find that Plaintiffs' claims are typical of the class they

seek to represent. *De La Fuente*, 713 F.2d at 232.

**D. Adequacy**

To meet Rule 23's adequacy requirement, Plaintiffs must demonstrate that they will fairly and adequately protect the interests of the class, that their interests coincide with the interests of the rest of the class, and that their attorneys are prepared to vigorously prosecute the action. *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 154 (N.D. Ill. 1982). The adequacy threshold is not high: "[a]s long as the Court is assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest" the requirement is met. *Id.* (citation omitted). Defendants do not challenge—and at this time we have no concerns related to—the ability of Plaintiffs' attorneys to vigorously prosecute this action.[6] We will therefore focus on whether Plaintiffs are sufficiently qualified and free of conflict to represent the proposed class.

Defendants argue that Plaintiffs' claims conflict with the claims of any class members who took no action to retrieve their property after receiving the allegedly unconstitutional inventory slip. (R. 32, Defs.' Resp. at 7-8.) Defendants assert that Plaintiffs would be "excellent witnesses" for the defense because their demand for the return of their money when they did not receive notice of its availability could undermine the suggestion that other class members were lulled into complacency by the allegedly unconstitutional notice procedures. (*Id.* at 8.) Once again, we decline to accept Defendants' characterization of the proposed class as one that is inherently divided between those who took action in response to the allegedly false notice and

---

[6]Plaintiffs represented in their opening brief that their attorneys have successfully represented civil rights claimants in other class actions. (R. 29-2, Pls.' Mem. at 7.)

13

those who did not. While evidence that some potential plaintiffs took action to retrieve their property and were rebuffed may be relevant to the core issue of whether the notice procedures were constitutional, that evidence would not necessarily discredit the claims of those who reacted to the allegedly misleading inventory by continuing to wait for notice from Defendants. We see no conflict based on this secondary factual distinction where all class members were subjected to the same allegedly unconstitutional policy.[7] As a result, we find that Plaintiffs meet the Rule 23 adequacy requirement.

### E. Rule 23(b)

Plaintiffs state that the proposed class qualifies for certification under both Rule 23(b)(2) and 23(b)(3). (R. 29-1, Pls.' Mot. at 5-6.) Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief is the predominant remedy requested for the class members." *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992). In this case, Plaintiffs have alleged that Defendants' allegedly unconstitutional notice policy was applied to the class as a whole. They seek declaratory relief stating that Defendants' alleged policy is unconstitutional, injunctive relief prohibiting Defendants from continuing the alleged practice, and injunctive relief requiring Defendants to return Plaintiffs' property. (R. 31, Second Am. Compl. at 13-14.) The only damages that Plaintiffs have sought are compensatory damages in

---

[7]Again, we have the discretion to modify the class definition if it becomes apparent that a conflict does in fact exist. *Buycks-Roberson*, 162 F.R.D. at 328-29.

the form of "reasonable interest." (*Id.* at 13.) The request for reasonable interest is certainly secondary to what is at stake in this case: the return of Plaintiffs' property and a change in the allegedly unconstitutional policy. Because the primary relief sought in this case—injunctive and declaratory—applies to the whole class, we find that the proposed class qualifies for certification under Rule 23(b)(2). *Guardian Life Ins.*, 145 F.R.D. at 477.

In the interest of thoroughness, we will also address Plaintiffs' assertion that the proposed class qualifies for certification under Rule 23(b)(3). (R. 29-1, Pls.'s Mot. at 5-6.) Rule 23(b)(3) permits class certification where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Defendants argue that individual issues predominate because there are individualized questions of damages for each class member. We disagree. Plaintiffs have demanded the return of the class's money with reasonable interest, declaratory and injunctive relief, and attorneys' fees and costs. (R. 31, Second Am. Compl. at 13-14.) As stated above, Plaintiffs' second amended complaint requests damages only in the form of reasonable interest on their confiscated property. There is thus no reason to anticipate any difficult individualized inquiry into particular plaintiffs' damages since they can easily be calculated based on objective criteria. Moreover, individual damages inquiries do not preclude class certification where common questions of law or fact predominate. *See Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003) (stating that "a court should focus upon the issue of liability, instead of damages" in determining whether the predominance requirement is met). The issue of liability in this case turns on whether Defendants' alleged policy was constitutional.

This common question certainly predominates over the secondary issue of how much interest individual plaintiffs are owed.

We also find that a class action is the superior method in which to litigate this dispute. A class action is superior when it will protect the rights of class members who would lack the resources to bring their opponents into court. *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). As the Seventh Circuit has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997). In this case, the property allegedly being wrongfully withheld from individual class members may not be sufficiently substantial to provide incentive for class members to pursue their rights on behalf of themselves. Certification of the proposed class may be the only mechanism by which those individuals can seek review of the allegedly unconstitutional policy. As a result, we find that a class action is superior to individual litigation of the claims at issue in this case. The proposed class thus meets the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons set forth above, we grant Plaintiffs' motion for class certification, (R. 29-1), and we certify the following class:

> All those persons who, after June 26, 2001, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; and f) the money has not been returned to the arrestee.

This case is set for status on November 22, 2004 at 9:45 a.m. The parties are again strongly urged to exhaust all settlement possibilities before that date.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: November 9, 2004**