# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ELTON GATES and LUSTER NELSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-C-2155 |
| | ) | |
| OFFICER B. TOWERY, Star No. 8233, | ) | Judge Ruben Castillo |
| OFFICER P. GALIARDO, Star No. 19174, | ) | |
| and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elton Gates and Luster Nelson (together "Plaintiffs") have brought a class action suit against the City of Chicago ("the City") and Superintendent of Police Philip Cline (together, "the City Defendants"), as well as police officers B. Towery and P. Galiardo (collectively "Defendants"). Plaintiffs allege that Defendants violated their Fourteenth Amendment due process rights and Illinois law by propagating a policy whereby police officers seize money found in the vicinity of a person placed under arrest, issue an inventory receipt for the money which states that the arrestee will be notified when the money is available for release, and then never provide notice that the money is available. Plaintiffs further allege that Defendants ignored their repeated demands for the return of their property. Currently before the Court are two motions: the City Defendants' motion to dismiss the fourth amended complaint filed in this suit, (R. 140-1), and Plaintiffs' motion to segregate a class fund, (R. 164-1). In the interest of maximizing efficiency in what is currently one of the oldest cases on this Court's

docket,[1] this opinion will address and resolve both motions.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this case on March 23, 2004, alleging that Defendants' policy of issuing false or misleading inventory receipts violated their Fourth, Fifth, and Fourteenth Amendment rights. After considering Defendants' first motion to dismiss, this Court dismissed the case without prejudice. Upon Plaintiffs' motion to reconsider, however, this Court reinstated the case only with respect to the Fourteenth Amendment due process claim. *See Gates v. Towery*, 331 F. Supp. 2d 666 (N.D. Ill. 2004). On November 9, 2004, this Court certified the following class:

> All those persons who, after June 26, 2001, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; and f) the money has not been returned to the arrestee.

*Gates v. Towery*, 04-C-2155, 2004 WL 2583905, *9 (N.D. Ill. Nov. 10, 2004). Defendants appealed the certification decision to the Seventh Circuit, which affirmed the class certification on December 21, 2005. *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005). Discovery proceeded in the case during the pendency of the appeal.

On February 7, 2006, Plaintiffs filed what is now the fifth incarnation of the complaint in this case. (R. 82, Fourth Am. Compl.) The fourth amended complaint adds six new counts seeking compensatory and punitive damages on behalf of Plaintiffs and the class for conversion

---

[1]Part of the reason for this delay was the decision of Defendants' prior counsel to proceed with an appeal of this Court's class certification ruling.

and replevin under Illinois law and seeking return of the class's property under Illinois's Uniform Disposition of Unclaimed Property Act ("UDUPA"), 765 ILCS 1025/1, *et seq.* (*Id.* at 13-16.) Plaintiffs then sought certification of a supplemental class to accommodate the longer statute of limitations period for their state law claims and their theory that they do not have to prove that the inventory receipts were false or misleading to prevail on their state law claims. (R. 90, Pls.' Mot. to Certify Supp. Class at 2.) On March 30, 2006, this Court granted Plaintiffs' motion. (R. 143, 3/03/06 Order.)

On March 29, 2006, the City Defendants moved to dismiss the fourth amended complaint in its entirety. (R. 140-1.) Plaintiffs then filed a motion to segregate a class fund in which they ask this Court to issue an order to transfer $6 million into an interest-bearing account "to preserve and protect the class fund." (R. 164-1, Mot. to Segregate at 3.)

## MOTION TO DISMISS

### I. Legal Standard

This Court will only dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it appears "beyond doubt that the plaintiff cannot prove any set of facts" in support of his claim which would entitle him to relief. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In considering a Rule 12(b)(6) motion to dismiss, this Court draws all reasonable inferences in favor of the plaintiff and accepts as true all well-pleaded factual allegations. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000).

## II. Analysis

In moving to dismiss the fourth amended complaint, the City Defendants argue that Plaintiffs have not alleged a sufficient custom or policy to support their due process claims against Cline in his official capacity. They also argue that Plaintiffs have not alleged sufficient personal involvement to support their due process claims against Cline in his individual capacity.[2] (R. 141, Defs.' Br. at 3-6.) They further argue that Gates's conversion and replevin claims are barred by the statute of limitations and that Plaintiffs have not met the pleading requirements necessary to sustain their conversion and replevin claims. (*Id.* at 7-11.) Finally, the City Defendants argue that we should dismiss Plaintiffs' claim under the UDUPA because that statute does not create a private cause of action, or, in the alternative, because a valid city ordinance or the Law Enforcement Disposition of Property Act ("LEDPA"), 765 ILCS 1030/0.01, *et seq.*, governs the disposition of unclaimed funds in this case. (*Id.* at 11-14.) We will address each of these arguments below.

### A. Claims Against Cline

The fourth amended complaint does not specify whether the claims against Cline are made in his individual or official capacity. In their response brief, Plaintiffs clarify that Cline is sued only in his official capacity. (R. 151, Pls.' Resp. at 7.) Their clarification is consistent with the allegations of the complaint, which refer to Cline's implementation of the alleged policy in

---

[2]The City Defendants initially argued that the Fourteenth Amendment claims must be dismissed in their entirety because the complaint's allegations are insufficient to support a custom or policy as required under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (R. 141, Defs.' Br. at 3-5.) In their reply brief, however, the City Defendants recognized that this Court already declined to dismiss the due process claims on that basis. (R. 161, Defs.' Reply at 2.) Accordingly, they withdrew their motion with respect to Counts I, II, and III, which represent the due process claims.

4

his role as Superintendent of Police. (R. 82, Fourth Am. Compl. ¶¶ 2, 9, 10.) "[A]n official capacity suit will be presumed when the indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991); *see also Kolar v. County of Sangamon*, 756 F2d 564, 568 (7th Cir. 1985). Because Cline is sued only in his official capacity, the City Defendants' motion to dismiss any individual claims against Cline is denied as moot.

In their opening brief, the City Defendants argue that any official capacity claims against Cline should be dismissed because Plaintiffs inadequately alleged an unconstitutional policy. (R. 141, Defs.' Br. at 5-6.) It is not clear whether the City Defendants withdrew this argument with respect to Cline in their reply brief.[3] Regardless, Plaintiffs' allegations against Cline in his official capacity are sufficient to survive a motion to dismiss. To sustain a Section 1983 claim against a government official acting in his official capacity, a plaintiff must allege that a government official took action under color of state law that caused the deprivation of a federal law and can be linked to the government's policy or custom. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Hill*, 924 F.2d at 1372. The fourth amended complaint identifies Cline as Superintendent of Police and states that together with the City, he sets and implements the policies which require arresting officers to seize money from an arrestee, issue a false or

---

[3]Upon reply, Defendants state:

> [t]o the extent Plaintiffs' Fourth Amended Complaint as currently pleaded is directed to Superintendent Cline in his individual capacity, Defendants reallege and incorporate the arguments in Section V of their memorandum in support of their motion to dismiss . . . . Unless and until Plaintiffs allege claims against Superintendent Cline in his official capacity, individual claims against him should be dismissed.

(R. 161, Defs.' Reply at 2.)

misleading inventory receipt, and then refuse to return the money when an arrestee makes a demand. (R. 82, Fourth Am. Compl. ¶¶ 2, 9-15, 23, 25.) Accordingly, Plaintiffs have sufficiently alleged an official capacity claim against Cline.

### B. Gates's Conversion and Replevin Claims: Statute of Limitations

Plaintiffs agree that their conversion and replevin claims are subject to the one-year statute of limitations set forth in the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act), 745 ILCS 10/8-101(a). (*See* R. 118, Pls.' Reply in Support of Mot. to Certify Supp. Class at 7); *see also Evans v. City of Chicago*, 434 F.3d 916, 934-35 (7th Cir. 2006) (noting that "[t]he limitations period for tort claims . . . against governmental entities and their employees . . . is only one year pursuant to 745 ILCS 10/8-101"). The City Defendants argue that Gates's conversion and replevin claims are barred by the statute of limitations because his causes of action accrued on January 14, 2003—the date on which he was arrested and his property seized—and he did not file his original complaint until March 23, 2004, more than two months after the one-year period expired.[4] (R. 141, Defs.' Br. at 9.) Plaintiffs, on the other hand, assert that Gates's conversion and replevin claims did not accrue until June 26, 2003, the date on which Gates's trial was concluded and he was first able to demand the return of his property. (R. 151, Pls.' Resp. at 10.)

The Court agrees that Gates's conversion and replevin claims did not accrue until June 26, 2003—the date after which Plaintiffs expressly allege that "[n]one of the Defendants had the right to retain Plaintiff's property" and after which Gates demanded the return of his property

---

[4]Because the state claims in the fourth amended complaint arise "out of the same conduct, transaction, or occurrence set forth . . . in the original pleading," the fourth amended complaint relates back to the date of the original complaint. Fed. R. Civ. P. 15(c)(2).

6

"several times." (R. 82, Fourth Am. Compl. ¶¶ 18-20.) Under Illinois law, a plaintiff has a cause of action for conversion where (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 184 Ill.2d 109, 114 (Ill. 1998). A plaintiff has a cause of action for replevin where he demanded his property and the defendant wrongfully refused to return it. *First Illini Bank v. Wittek Indus., Inc.*, 261 Ill. App. 3d 969, 970 (3d Dist. 1994). Gates alleges that June 26, 2003, is the date after which Defendants' possession of his property became unlawful, and he first demanded the return of his property after that date. Accordingly, we find that the one-year statute of limitations is not a bar to Gates's replevin or conversion claims.

### C. Sufficiency of Allegations: Conversion

The City Defendants next argue that Plaintiffs' conversion claims should be dismissed because Plaintiffs: (1) "failed to plead that Defendants remain in possession of the money and are converting it to their own use; and (2) have not demonstrated that the money subjected to the alleged conversion "is capable of being described as a specific chattel." (R. 141, Defs.' Br. At 9-10.) The first argument deserves little attention. Plaintiffs are not required to specifically allege that Defendants are converting the property "to their own use." It is enough to allege that the Defendants wrongfully assumed control over the property. *Cirrincione*, 184 Ill.2d at 114. The fourth amended complaint explicitly alleges that Defendants seized Plaintiffs' property and "they continue to retain said property with no intention of instituting forfeiture proceedings . . . ." (R. 82, Fourth Am. Compl. ¶ 25.) The pleading standards in federal court simply require that a plaintiff plead his claims with sufficient particularity to put the defendant on notice of what the

7

claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Conley*, 355 U.S. at 47. Here, Plaintiffs specifically alleged that they demanded the return of their property and nonetheless Defendants "continue to retain said property." (R. 82, Fourth Am. Compl. ¶ 25.) This claim is sufficient to notify Defendants of Plaintiffs' charge that they remain in possession of the seized money.

Defendants correctly assert that in a conversion action involving money, the money must be "capable of being described as a specific chattel." *Fonda v. Gen. Cas. Co. of Ill.*, 279 Ill. App. 3d 894, 899 (1st Dist. 1996); *Voutiritsas v. Intercounty Title Co. of Ill.*, 279 Ill. App. 3d 170, 186 (1st Dist. 1996). It is not necessary, however, that "for purposes of identification that money should be specifically earmarked." *In re: Thebus*, 108 Ill. 2d 255, 260 (Ill. 1985). As long as the money is a specified identifiable fund, it can be the subject of a conversion action. *Id.* at 263-64; *Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777, 794 n.9 (N.D. Ill. 1995). Money is sufficiently identifiable where a specific amount is transferred to a bank from an outside source. *See Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1059-60 (1st Dist. 1996); *see also Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003-05 (2d Dist. 2004) (noting that funds need not be held in segregated account to be sufficiently identifiable for purposes of a conversion claim). Here, Plaintiffs alleged that Defendants seized specific amounts of money from them—$113.00 from Gates and $59.00 from Nelson—and then impounded the money. (R. 82, Fourth Am. Compl. ¶¶ 8-9.) Thus, the money that is the subject of their conversion claims is a specific sum transferred from an outside source. Accordingly, the conversion claims may proceed.

### D. Sufficiency of Allegations: Replevin

The City Defendants assert that Plaintiffs' replevin claims must be dismissed because "[a]n action for replevin cannot exist where defendant is not in possession of the property at the time the action is brought," and "Plaintiffs have failed to plead that Defendants are currently in possession of their money." (R. 141, Defs.' Br. at 10.) The fourth amended complaint states that: (1) Plaintiffs were told by a Chicago police officer that the City's policy was "not to return seized property"; (2) Defendants "have refused to return the money"; (3) "Defendants seized Plaintiff's property and detained it for months"; (4) Defendants "continue to retain said property with no intention of instituting forfeiture proceedings;" and (5) that it is the City's policy "to retain seized property, provide a false and misleading inventory receipt form, and to refuse to promptly return the property at the conclusion of the criminal proceedings[.]" (R. 82, Fourth Am. Compl. ¶¶ 21, 23, 25.) These allegations put Defendants on notice that Plaintiffs believe Defendants are in possession of their money. As such, Plaintiffs have met their burden under Rule 8 and are entitled to proceed to the merits of their replevin claims. *See Conley*, 355 U.S. at 47. The City Defendants argue that Gates and Nelson cannot adequately represent class conversion or replevin claims because their own claims fail. Given our finding that Gates's and Nelson's conversion and replevin claims may proceed, the class claims may proceed as well.

### E. UDUPA Claim

Plaintiffs' UDUPA claim—count eight of the fourth amended complaint—does not fare as well.[5] The UDUPA establishes a system through which persons in possession of unclaimed

---

[5]The UDUPA claim is labeled "Count VII." It is, however, the eighth count in the fourth amended complaint.

9

property are required to report property which is presumed abandoned to the state Treasurer. 765 ILCS § 1025/1 *et seq.*; *Canel v. Topinka*, 212 Ill.2d 311, 317 (Ill. 2004). Under the statute, property that is held by a public authority or public officer of the state of Illinois is presumed abandoned where it has remained unclaimed by its owner for more than seven years. 765 ILCS § 1025/8. The state holds abandoned property reported pursuant to UDUPA as a custodian for the property owner and has "free use of the property unless and until the owner reclaims it[.]" *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999). The statute allows for the return of abandoned property without court action: "[a]ny person claiming an interest in any property delivered to the State under this Act may file a claim thereto . . . on the form prescribed by the State Treasurer." 765 ILCS 1025/19.

In count eight of the fourth amended complaint, Plaintiffs—on behalf of the class—demand the return of their property under the UDUPA. (*Id.* ¶¶ 29-31.) The express allegations of the fourth amended complaint state, however, that Plaintiffs and the class have not abandoned their property. Instead, Plaintiffs allege that they never relinquished ownership of their money and have made repeated demands to the Chicago Police Department for its return. According to their allegations, the Defendants—not the State—are in possession of their property. Our review of the relevant case law shows that at least one class action has been brought against state officials for the recovery of abandoned property under the UDUPA.[6] *See, e.g., People ex rel. Fahner v. Chi. Transit Auth.*, 127 Ill App. 3d 405, 407 (1st Dist. 1984). The entire premise of Plaintiffs' allegations here, however, is that the purported class has never

---

[6]The class action in *Canel* asserted that the state's retention of dividends and interest under the UDUPA violated the United States and Illinois Constitutions. 212 Ill.2d at 315-16. The complaint did not allege a cause of action under the UDUPA. *Id.*

abandoned its property. Because the UDUPA provides for the disposition of presumptively abandoned property, it provides Plaintiffs no aid. *See, e.g., Presley v. Memphis*, 769 S.W.2d 221, 224 (Tenn. App. 1989) (noting that Tennessee's version of the UDUPA "govern[s] only those specific circumstances set forth in the statute . . . and only statutorily abandoned property is disposed of under the UDUPA").

Apparently recognizing that the UDUPA has not been invoked in the manner Plaintiffs propose, Plaintiffs raise "at least three alternative theories of relief based on the UDUPA" in their response to the City Defendants' motion to dismiss, including imposition of a constructive trust, declaratory judgment followed by an order to return the money, or a common law claim of unjust enrichment. (R. 151, Pls.' Resp. at 12-15.) As the City Defendants aptly put it, "[e]ven notice pleading is not that liberal." (R. 161, Defs.' Reply at 6.) The words "constructive trust," "declaratory judgment," or "unjust enrichment" do not appear anywhere in the fourth amended complaint. While the federal rules of pleading do not require Plaintiffs to allege a legal theory, *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992), Plaintiffs' brief presents their declaratory judgment and unjust enrichment "theories" as distinct causes of action. (R. 151, Pls.' Resp. at 14-15 (stating that "the alleged facts support a declaratory judgment action" and that "Plaintiffs have alleged a common law claim of unjust enrichment".) The UDUPA allegations in the fourth amended complaint give no indication that they include non-UDUPA causes of action. In addition, Plaintiffs' argument that they can recover under the UDUPA with constructive trust as a remedy is unsupported by any cases under the UDUPA. Accordingly, we find that Plaintiffs' UDUPA claim should be dismissed.

11

## MOTION TO SEGREGATE CLASS FUND

In their motion to segregate the class fund, Plaintiffs seek an order segregating $6 million into an interest-bearing account for a class fund. (R. 164, Pls.' Mot. ¶ 12.) For several reasons, we find that such an order is inappropriate here. First, Plaintiffs' arrival at the $6 million figure for the "class fund" is largely arbitrary. Defendants identified $3,651,363.09 as "Money Held for Investigation" from February 12, 2002 until December 15, 2004. (R. 183, Pls.' Sur-Response, Ex. 1, Inventory Chart.) Plaintiffs arrive at the $6 million figure by doubling $3.6 million to account for the supplemented class period going back to March 1999, and then arbitrarily reducing the figure to $6 million. (*Id.* at 3-6.) Plaintiffs insist that $6 million is "low ball" for the class fund during that period. They supply no evidence, however, to demonstrate that the rate of seizure during the 1999-2002 period was identical or even similar to that during the 2002-2004 period.

Second, Plaintiffs have not shown that the $3.6 million fits within the parameters outlined in the class definition. The chart on which Plaintiffs rely for the $3.6 million does not represent money held only for individuals meeting the class description: namely individuals to whom an inventory receipt was issued indicating they would receive notice and who never subsequently received notice after the money was available for pick-up. (*See* R. 180-2, Defs.' Sur-Reply at 3-4.) Accordingly, Plaintiffs simply have not demonstrated that the $6 million they seek to sequester represents money that the class would be entitled to in the event that they secure a final judgment in their favor.

12

Third, even if Plaintiffs had properly identified a figure representing a potential class fund, they have not shown that there is a need to order segregation of that fund into an interest-bearing account at this point in the litigation. The City has stated that Plaintiffs "cannot establish that the City would be unable to satisfy any monetary judgment in their favor absent the extraordinary relief sought." (R. 172, City's Resp. at 3.) This Court accepts the City's representation that segregation is unnecessary to ensure satisfaction of any potential judgment. Indeed, Plaintiffs do not even argue that their requested relief is necessary; instead, they simply assert without much by way of explanation that "[n]o one is harmed" by segregating the class fund. (R. 177, Pls.' Reply at 2.) The City, however, asserts that creating a new interest-bearing account would require "substantial additional manpower" and would distract the Chicago Police Department from its primary goal of safeguarding the citizens of Chicago. (R. 180-2, City's Sur-Reply at 2.) Plaintiffs do not refute this assertion. (*See* R. 183, Pls.' Sur-Response at 10-11.)

Finally, Plaintiffs have not convinced this Court that the relief they request is anything other than a request for a preliminary injunction. Because money is the only relief requested in this case, Plaintiffs cannot show the requisite irreparable harm to support injunctive relief. *Graham v. Medical Mut. of Oh.*, 130 F.3d 293, 296 (7th Cir. 1997) (noting that to meet irreparable harm requirement, injury must be one for which money cannot atone). Perhaps recognizing this difficulty, Plaintiffs invoke three sources of authority in their reply brief—mentioned nowhere in their motion—under which they claim we should grant the requested relief. First, they invoke Federal Rule of Civil Procedure 64, which states:

> [a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances

and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought . . .

Again, Plaintiffs have not shown that seizure of the money is necessary to secure any potential judgment. Nor have they shown that Illinois law provides for the sequestration remedy that they seek. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Track Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 436 n.10 (1974) (noting that Rule 64 incorporates state law).

Plaintiffs' reply brief next invokes the All Writs Act, 28 U.S.C. § 1651, in support of their motion. The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* This Act is not a grant of plenary power; instead, it is designed to assist federal courts in the exercise of their jurisdiction. *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979). Plaintiffs have not suggested that our jurisdiction over this matter is threatened in any way or that segregation of a class fund is at all necessary to the exercise of this Court's jurisdiction. Finally, Plaintiffs rely on this Court's inherent authority to manage litigation. While federal courts are vested with the control necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash Railroad Company*, 370 U.S. 626, 630-31 (1962), Plaintiffs have not shown that the sequestration of $6 million will either expedite the current proceedings in any justifiable manner. For all of these reasons, Plaintiffs' motion to segregate a class fund is denied.[7] (R. 164-1.)

---

[7] In their reply, Plaintiffs request that this Court expressly rule on the issue of whether the City might have a cognizable interest in the class fund. (R. 177, Pls.' Reply at 6.) Because it is not necessary for us to resolve that issue in order to rule on the present motion, at this point any such ruling would be inappropriately advisory.

14

## CONCLUSION

For the reasons set forth above, the City Defendants' motion to dismiss is granted with respect to Plaintiffs' UDUPA claim, but is denied with respect to the other claims in the fourth amended complaint. (R. 140-1.) Plaintiffs' motion to segregate a class fund is denied in its entirety. (R. 164-1.) This case is hereby set for a status hearing on June 27, 2006 at 9:45 a.m. The parties are requested to reevaluate their respective settlement positions after a careful evaluation of this opinion. The parties should also be prepared to present their positions regarding the possible modification of the currently certified class definition in light of today's opinion.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: June 20, 2006