UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELTON GATES and LUSTER NELSON,       )
                                     )
         Plaintiffs,                 )
                                     )
    v.                               )       No. 04 C 2155
                                     )
Officer B. TOWERY, Star No. 8233, Officer  )   Judge Ruben Castillo
P. GALIARDO, Star No. 19174, Officer )
ECHOLS, Star No. 12329, Officer      )
COLLIER, Star No. 18240, PHILIP CLINE, )
Superintendent of Police for the City of  )
Chicago, and the CITY OF CHICAGO,    )
                                     )
         Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Elton Gates and Luster Nelson (collectively "Plaintiffs"), have brought a class

action law suit against the City of Chicago ("the City") and Superintendent of Police, Philip

Cline (together, "the City Defendants"), as well as police officers Brian Towery, Paul Galiardo,

James Echols, and Dwayne Collier (together, "the Officer Defendants") (the City Defendants and

the Officer Defendants collectively, "Defendants"). Plaintiffs allege that Defendants violated the

Fourteenth Amendment Due Process Clause and Illinois law by seizing money found in the

vicinity of a person placed under arrest, issuing an inventory receipt for the money stating that

the arrestee will be notified when the money is available for release, and then never providing

notice that the money is available. Plaintiffs further allege that Defendants ignored their repeated

demands for the return of their property. Presently before this Court are two sets of motions:

Defendants' motion to dismiss Plaintiffs' Fifth Amended Class Action Complaint ("the Fifth

Amended Complaint") (R. 204-1) and Plaintiffs' and the City Defendants' cross-motions to

modify the class definition (R. 194; R. 200).

## PROCEDURAL HISTORY

This case has a long history in this Court, which has already authored three opinions, one

of which has been appealed and affirmed by the United States Court of Appeals for the Seventh

Circuit. *See Gates v. Towery*, 331 F. Supp. 2d 666 (N.D. Ill. 2004) ("*Gates I*"); *Gates v. Towery*,

No. 04 C 2155, 2004 WL 2583905 (N.D. Ill. Nov. 10, 2004) ("*Gates II*"), *aff'd*, 430 F.3d 429

(7th Cir. 2005) ("*Gates III*"); *Gates v. Towery*, 435 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Gates

IV*"). The facts and previous proceedings are summarized below to the extent that they are

relevant to the present motions.

Plaintiffs' initial complaint was filed on March 23, 2004. In that complaint Gates alleged

on behalf of himself and all others similarly situated that the City Defendants and officers

Towery and Galiardo had violated his due process rights. (R. 1.) The complaint was later

amended on May 4, 2004, to add Nelson as a plaintiff and officers Echols and Collier as

defendants. (R. 9, Am. Compl.) Since it was initially filed, the complaint has been amended five

times.

In the latest iteration of the complaint, Gates alleges he was arrested January 14, 2003, in

Chicago, Illinois, at which time $113.00 was taken from him by officers Towery and Galiardo.

(R. 192, Fifth Am. Compl., Count I, ¶ 8.) Nelson alleges that he was arrested on February 4,

2004, in Chicago, Illinois, for a narcotics violation, at which time $59.00 was taken from him by

officers Collier and Echols. (*Id.*, Count II, ¶ 8.) Both Gates and Nelson claim that they were

issued an inventory receipt for the money that was taken from them. (*Id.*, Count I, ¶¶ 11-12 &

Count II, ¶¶ 11-12.) According to Plaintiffs, each of the inventory receipts advised that they

2

would subsequently be notified when their property was available for return. (*Id.*, Count I, ¶ 13 & Count II, ¶ 13.) Plaintiffs allege, however, that Defendants were aware that neither the arresting officers nor the City would ever actually send them notice that the seized property would be returned. (*Id.*, Count I, ¶ 14 & Count II, ¶ 14.) Plaintiffs allege that this practice of issuing "misleading" inventory receipts and then never giving notice that the property was available for return was Defendants' "custom and policy." (*Id.*, Count I, ¶¶ 9, 25 & Count II, ¶¶ 9, 25.)

On May 5, 2004, Plaintiffs moved for class certification. In *Gates II*, this Court held that Plaintiffs met the requirements for class certification as set forth in Federal Rule of Civil Procedure 23(a).[1] 2004 WL 2583905, at *5-*8. Further, the Court held that Plaintiffs met the requirements for class certification under either Rule 23(b)(2) or 23(b)(3). *Id.* at *8-*9. Accordingly, the following class was certified:

> All those persons who, after June 26, 2001, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; and f) the money has not been returned to the arrestee.

*Id.* at *9.

The Seventh Circuit granted Defendants' petition for interlocutory appeal of the class

---

[1] While not directly relevant to the motions at hand, we note that in *Gates I*, we denied Plaintiffs' motion to reconsider our May 19, 2004 order dismissing their complaint under Rule 12(b)(6) with respect to all the claims except the procedural due process claim and ordered Plaintiffs to file an amended complaint. 331 F. Supp. 2d at 673.

certification decision on December 28, 2004. (R. 42.) In the appeal, Defendants principally

argued that certification was improper because the case was mooted when the City sent the

named plaintiffs checks for the amounts seized in the summer of 2004. *Gates III*, 430 F.3d at

430. The Seventh Circuit rejected Defendants' mootness arguments, concluding the tender was

insufficient to meet Plaintiffs' demand for damages. Furthermore, based on the City's assertions

that it had changed its operating procedures effective December 14, 2004, the Seventh Circuit

opined:

> It may be that the changes in Chicago's operating procedures would make prospective relief inappropriate—indeed, Gates and Nelson lack standing to seek it, because they do not contend that they are likely to be arrested again. . . . To the extent that they want an injunction requiring the City to compensate them for past losses, they are on a snipe hunt. There's no such animal, beyond the equitable remedy of restitution—and the City stands ready to hand over the amounts it seized in order to avoid unjust enrichment. If the constitutional sufficiency of the City's current policies is in dispute, some person adversely affected by them (as Gates and Nelson are not) will have to take up the cause.

*Id.* at 432.

After the Seventh Circuit issued its decision, Plaintiffs filed a fourth amended complaint

in which they added new counts requesting compensatory and punitive damages for conversion

and replevin under Illinois law and for the return of the class members' property under the

Illinois Uniform Disposition of Unclaimed Property Act ("UDUPA"), 765 Ill. Comp. Stat.

1025/1 (2006), *et seq.* (R. 82, Fourth Am. Compl.) This Court granted Plaintiffs' motion to

certify a supplemental class to accomodate the new state law claims on March 30, 2006. (R. 143,

Minute Entry.) Defendants thereafter filed a motion to dismiss the fourth amended complaint. In

*Gates IV*, we granted the motion to dismiss with respect to the UDUPA claims, but denied the

motion with respect to the state law claims for conversion and replevin. 435 F. Supp. 2d at 805.

4

Following this Court's decision in *Gates IV*, Plaintiffs filed two motions, a motion for leave to file the Fifth Amended Complaint (R. 192-1) and the motion to modify the class definition that is presently before the Court (R. 194). The Fifth Amended Complaint added new state law claims for unjust enrichment, constructive trust, declaratory judgment, and breach of fiduciary duty. (R. 192, Fifth Am. Compl.) Plaintiffs' motion for leave to file the Fifth Amended Complaint was granted on June 27, 2006. (R. 196, Minute Entry.)

There are currently three motions pending before this court: Defendants' motion to dismiss the Fifth Amended Complaint; Plaintiffs' motion to modify the class definition; and the City Defendants' cross motion to modify the class definition. In their motion to dismiss, Defendants request that the Court dismiss for failure to state a claim the claims for unjust enrichment, constructive trust, declaratory judgment, and breach of fiduciary duty, and dismiss all of Nelson's claims because they are barred by *res judicata*. In Plaintiffs' motion to modify the class definition, Plaintiffs request that the Court revise the class definition so that persons arrested after December 13, 2004, fall within the class. In their cross-motion, the City Defendants request substantive changes to the class definition as well as changes in the time limits for entering the class.

## MOTION TO DISMISS

We turn first to Defendants' motion to dismiss various claims contained in the Fifth Amended Complaint.

### I. Legal Standard

This Court will only dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it appears "beyond doubt that the plaintiff cannot prove any set of facts" in support of his claim

5

which would entitle him to relief. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In considering a Rule 12(b)(6) motion, this Court draws all reasonable inferences in favor of the plaintiff and accepts as true all well-pleaded factual allegations contained in the complaint. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000).

## II. Analysis

### A. State law claims

Defendants seek dismissal of four of the state law claims added in Plaintiffs' Fifth Amended Class Action Complaint: unjust enrichment (Count VI), constructive trust (Count VII), declaratory judgment (Count VIII), and breach of fiduciary duty (Count IX).[2] Defendants argue that these claims are essentially claims for restitution and were mooted by the City's offer to return the money taken from Gates and Nelson.

A case becomes moot when a litigant's personal interest in the outcome of the suit expires before the termination of the litigation. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)). A plaintiff's personal interest ends when the defendant "offers to satisfy the plaintiff's entire demand." *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). A plaintiff cannot preserve its interest merely by refusing the offer. *Holstein*, 29 F.3d at 1147; *Monsanto*, 926 F.2d at 598.

Here, in a letter dated March 25, 2004, just two days after Gates filed his initial

---

[2] The Fifth Amended Complaint contained a total of six state law claims, including, in addition to those listed above, claims for conversion (Count IV) and replevin (Count V). The conversion and replevin claims were added in Plaintiffs' fourth amended complaint. (R. 82.) Defendants do not seek dismissal of these two state law claims in the present motion to dismiss.

6

complaint, the City tendered a check to counsel for Gates for $113, the amount that was taken

from him at the time of his arrest. (R. 32, Ex. A.) Nelson was added as a named plaintiff on

May 4, 2004, (R. 9, Am. Class Action Compl.), and on June 3, 2004, the City sent his counsel,

the same attorney representing Gates, a similar letter and check for the amount he claimed was

taken from him (R. 32, Ex. G). Within a few days of receiving each of the checks, counsel

returned the checks with a letter stating that the checks were insufficient to meet the named

plaintiffs' demand for damages and the class's claims. (R. 32, Exs. C & H.)

Beginning with the question of whether Defendant's tender fully met plaintiffs' demands

in the four state law claims at issue, both parties acknowledge in their briefing that these claims,

which request that the Court order the City to return Plaintiffs' money, are directed to restitution.

(e.g., R. at 218, Pls.' Resp. at 7; R. at 204-1, Defs.' Mem. at 3-4.) Therefore, Plaintiffs' state law

claims for unjust enrichment (Count VI), constructive trust (VII), declaratory judgment (VIII),

and breach of fiduciary duty (IX) will hereinafter be referred to collectively as the "restitution-

based claims." Under Illinois law, restitution is accomplished by "return or restoration of some

specific thing to its rightful owner or status." *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d

1155, 1174 (Ill. 2005) (quoting Black's Law Dictionary 1339 (8th ed. 2004)). Thus, under

Illinois law Defendants' were not required to pay the named plaintiffs' court costs in order to

accomplish restitution. Further, the Seventh Circuit has indicated that the City's willingness to

return the Plaintiffs' money was sufficient to accomplish restitution. *Gates III*, 430 F.3d at 432.

As the City has tendered full payment to the named plaintiffs, the named plaintiffs' restitution-

based claims are moot.

In the class action context, a class's claim is not moot merely because a defendant tenders

7

full payment to the named plaintiff. *See Holstein*, 29 F.3d at 1147. The class's claim may not be moot if the district court has certified a class prior to the defendant's full tender, *id.*, or, if the named plaintiff has moved for certification of the class prior to the defendant's full tender. *Parks v. Pavkovic*, 753 F.2d 1397, 1403 (7th Cir. 1985) ("It is true that a case in this circuit holds that if the defendant 'buys off' the named plaintiff while a motion for class certification is pending, the case may not be moot."). This Court did not certify a class until November 10, 2004, *Gates II*, 2004 WL 2583905, at \*9, months after the City tendered payment to Nelson and Gates on March 25, 2004, and June 3, 2004, respectively. Unlike *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 869 (7th Cir. 1978), on which Plaintiffs' rely, Plaintiffs' motion to certify the class filed on May 5, 2004, (R. 11, Pls.' Mot) did not preserve the restitution-based claims because the restitution-based claims did not even surface until the Fifth Amended Complaint was filed on June 23, 2006. Thus, both Gates's and Nelson's restitution-based claims were mooted by the City's tender of full restitution years before they raised their restitution-based claims.

In a case where the named plaintiff has not moved for class certification prior to the termination of his or her personal stake, "[t]he only other vehicle by which [the named plaintiff] may avoid dismissal because of mootness is to demonstrate that his claim on the merits, while no longer live, is 'capable of repetition, yet evading review.'" *Holstein*, 29 F.3d at 1147. Plaintiffs' claims do not fall under this exception because in order for their claims to arise again, they would have to be arrested again by the Chicago police, an unlikely contingency. *See Kifer v. Ellsworth*, 346 F.3d 1155, 1157 (7th Cir. 2003) (rejecting a class plaintiff's argument that his claim survived mootness because it was likely to arise again when a new claim would require that the plaintiff be arrested and taken to the county jail, a remote possibility). Thus, the restitution-based claims,

8

like the claims of the named plaintiffs, are moot.

Furthermore, the Seventh Circuit briefly addressed the mootness of potential restitution claims in *Gates III.* The appellate court stated that Gates and Nelson lacked standing to seek injunctive relief for past losses "beyond the equitable remedy of restitution—and the City stands ready to hand over the amounts it seized, in order to avoid unjust enrichment." *Id.* at 432. Thus, the Seventh Circuit has indicated that to the extent Plaintiffs decided to seek restitution,[3] those claims would be barred by the City's willingness to return the money seized. For the foregoing reasons, the restitution-based claims are dismissed as moot.

### B. Res judicata

Defendants argue that Nelson's claims are barred by the doctrine of *res judicata* based on a final consent decree entered in *Pollard v. Daley,* No. 87 C 2401, 1989 WL 152394 (N.D. Ill. Dec. 4, 1989). The *Pollard* decree resolved two consolidated class action suits, *Fort v. Daley,* No. 83 C 623, and *Pollard v. Daley,* No. 87 C 2401. The *Pollard* plaintiffs alleged that the Chicago Police Department took money from them at the time they were arrested on narcotics-related charges but then neither instituted forfeiture proceedings nor returned their money. *Fort v. Daley,* Nos. 83 C 623, 87 C 2401, 1988 WL 94078, at *1 (N.D. Ill. Sept. 2, 1988). The *Pollard* plaintiffs sought to have the court declare the City's practice unconstitutional, order the return of their property, and enjoin the defendants from depriving arrestees of due process. *Id.* On December 4, 1989, the Court issued a final consent decree. *Pollard,* 1989 WL 152394, at *1. The decree noted that the Court had certified a class pursuant to Fed. R. Civ. P. 23(b)(2), which

---

[3] As previously noted, Plaintiffs' restitution-based claims were not added until the Fifth Amended Class Action Complaint, which was entered after the Seventh Circuit's decision issued.

9

was composed of three subclasses. Each of the three subclasses consisted generally of any person arrested since March 11, 1982, by a Chicago police officer for a narcotics offense in Cook County, from whom money was seized, provided that forfeiture proceedings had not been commenced by the State's Attorney. The three subclasses varied as to the amount of money seized and the type of showing required to demonstrate that forfeiture proceedings had not been commenced. *Id.*[4]

The *Pollard* consent decree constituted the final resolution of all claims raised in the *Pollard* plaintiffs' complaint. To this end, the decree stated:

---

[4] The three subclasses in the *Pollard* litigation were defined as follows:

> Subclass A includes any person arrested since March 11, 1982, by a Chicago police officer for a narcotics offense in Cook County, from whom less than $130 was seized, provided that the Chicago police department has no notice that any forfeiture proceeding has been filed against the seized money by the State's Attorney.
> Subclass B includes any person arrested since March 11, 1982, by a Chicago police officer for a narcotics offense in Cook County, from whom between $130 and less than $1,000 was seized, provided that the Chicago police department is in possession of a notice of declination from the State's Attorney regarding a forfeiture proceeding against the seized money.
> Subclass C includes any person arrested since March 11, 1982, by a Chicago police officer for a narcotics offense in Cook County, from whom $1,000 or more was seized, provided that (1) the Chicago police department is in possession of a notice of declination from the State's Attorney regarding a forfeiture proceeding against the seized money and (2) the Chicago police department has not submitted a request to the United States Department of Justice that the United States Department of Justice adopt the seizure and proceed with federal forfeiture proceedings, or has submitted such a request, but has received a notice from the United States Department of Justice declining to make an adoption.

*Pollard*, 1989 WL 152394, at *1.

> This consent decree shall constitute a final resolution of all issues presented by plaintiff's [sic] class action complaint, with the exception of the amount plaintiffs' attorneys fees and costs, and shall be binding upon the City, its agents and employees, and their successors in office, as well as binding upon the named plaintiff and all persons in the plaintiff class.

*Id.* at *2. According to the terms of the decree, the City was required to publish notice of the settlement and return the money seized to each class member that presented a timely claim for payment. *Id.* The decree also set forth a procedure for notifying future arrestees that their property was available for return. *Id.* at *3.

Defendants argue that Nelson's post-1982 narcotics-related arrest brings him within the consent decree such that his claim is barred by *res judicata.* (R. 204-1, Defs.' Mem. at 11.) Because Plaintiffs do not allege that Gates was arrested for a narcotics violation, Defendants' *res judicata* argument is not applicable to Gates. (R. 192, Fifth Am. Compl., Count I, ¶ 8.) For reasons that are not entirely clear, the parties did not apprise the Court of the existence of the *Pollard* consent decree until the filing of Defendants' motion to dismiss on July 12, 2006, more than two years after Plaintiffs' filed their initial complaint and almost two years after Defendants answered the complaint (R. 36, 38). Notably, however, Plaintiffs do not argue that Defendants' *res judicata* argument was waived by Defendants' failure to raise it as an affirmative defense in their answers (R. 36, 39) to the initial complaint. *See Nat'l Org. For Women, Inc. v. Scheidler,* 267 F.3d 687, 708 (7th Cir. 2001). Therefore, Plaintiffs have waived the right to make a waiver argument. *See Kratville v. Runyon,* 90 F.3d 195, 198 (7th Cir. 1996) (stating that a plaintiff in a case where claim preclusion was not timely raised "waived the waiver by not asserting the argument before the district court in the current litigation").

The court turns then to the merits of Defendants' *res judicata* argument. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (citations and quotation omitted). The three requirements for applying *res judicata* are: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Id.*

As to the first prong, class actions provide an exception to the general rule that identity of the parties is required for *res judicata* to apply. *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990). Thus, a class action suit may bind absent class members. *Id.* A consent decree resolving a class action suit in which the class members sought principally declaratory or injunctive relief and in which any claim for damages is merely incidental, will bind absent class members from seeking different injunctive relief for the same claim. *See id.* at 339; *see also In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). Damages are considered incidental when "the computation of damages is mechanical, without the need for individual calculation . . . so that a separate damages suit by individual class members would be a waste of resources." *Allstate*, 400 F.3d at 507 (internal citation and quotation marks omitted). Conversely, damages are non-incidental when they require more than a mechanical computation and there is a need for individual calculation. *See id.* Absent class members seeking non-incidental money damages may only be barred by *res judicata* if they have been afforded notice and an opportunity to opt out as required by Rule 23(b)(3) and (c)(2)(B). *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) ("[I]n actions for money damages class members are entitled to personal

12

notice and an opportunity to opt out."); *Tice v. Am. Airlines*, 162 F.3d 966, 972 (7th Cir. 1998)

(stating that "adequate notice and (at a minimum) an opportunity to opt out of an earlier case" is

required for *res judicata* to apply to class actions); *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir.

1982) (holding that absent class members in a prior suit for declaratory and injunctive relief were

not barred from bringing claims for money damages because notice was required for *res judicata*

to bar such claims).

The class represented by Nelson was certified under both Rule 23(b)(2) and (b)(3), *Gates*

*II*, 2004 WL 2583905, at *8, and Nelson seeks money damages to compensate for his out-of-

pocket losses and to punish the City as relief for his conversion and replevin claims. (R. 192,

Fifth Am. Compl., Count IV & Count V.) Determining the appropriate measure of damages will

not be a "mechanical" damages calculation because the amount of loss suffered will vary from

class member to class member. Therefore, the damages he seeks for conversion and replevin are

non-incidental. *Cf. In re Allstate Ins. Co.*, 400 F.3d at 507 (finding that damages were incidental

because the Court could easily determine each class members' ERISA benefits by reading off the

plan). With regard to Nelson's due process claims, the Seventh Circuit noted that Plaintiffs were

seeking "compensatory damages for any injury attributable to loss of the property's use." *See*

*Gates III*, 430 F.3d at 431. Like the damages for conversion and replevin, the assessment of

these damages will vary by class member and accordingly, the damages are non-incidental.

Because Nelson was not given notice and opportunity to opt out of the *Pollard* class, his damage

claims cannot be barred by *res judicata*. *See Martin*, 917 F.2d at 339-40; *Crowder*, 687 F.2d at

13

1008.[5]

To the extent that Nelson seeks injunctive relief as opposed to damages for violations of his due process rights, however, the court finds that he meets the first prong of the *res judicata* analysis. In *Martin*, the plaintiff alleged that the Cook County Jail's library policies denied him reasonable access to the library, and he sought both equitable relief and damages. 917 F.2d at 338. A 1982 consent decree existed, however, that governed the rights of pre-trial detainees at that facility. *Id.* at 339. The decree was expressly limited to resolving the class members' equitable claims and was continuing in nature because it set forth policies applicable to future class members. *Id.* at 339-40. The decree barred the plaintiff from bringing a separate suit even though he did not become a member of the class until he was detained in 1987, five years after the consent decree was issued. *Id.* Due to the consent decree's express limitation to equitable relief, the Seventh Circuit held that it only limited the plaintiff's ability to bring new claims for equitable relief; it did not bar him from bringing claims for damages. *Id.* Like the decree in *Martin*, the *Pollard* consent decree is continuing in nature in that any person arrested by the Chicago Police Department after March 11, 1982, who meets the class definition is covered by the decree. Further, the decree sets forth a policy for the handling of money seized in a narcotics-related arrest applicable after the decree was signed. *Id.* at *3. Thus, persons falling under the *Pollard* class definition who were arrested after 1982, including Nelson, meet the first prong of the *res judicata* to the extent that they seek injunctive relief.

---

[5] The *Pollard* class was given notice and an opportunity to object to the proposed settlement via two publications in the Chicago Tribune and the Chicago Sun Times. *Pollard*, 1989 WL 152394, at *2. Rule 23(c)(2)(B) requires both notice and an opportunity to opt out be given to class members claiming non-incidental money damages. Fed. R. Civ. P. 23(c)(2)(B).

14

We turn next to whether the second requirement for the application of the doctrine of *res judicata*, the identity of the causes of actions, has been met. For purposes of *res judicata*, a claim has "identity with a previously litigated matter if it emerges from the same core of operative facts as that earlier action." *Highway J Citizens Group*, 456 F.3d at 741 (internal quotation marks and citation omitted). We consider only whether Nelson's claim for injunctive relief arising from alleged violations of due process is sufficiently identical to the cause of action in *Pollard* since we have already found his restitution-based claims moot and determined that his damages claims are not barred by *Pollard*.

The operative facts giving rise to the *Pollard* litigation and Nelson's due process claim are identical and therefore, the second element required for *res judicata* is met. Contrary to Plaintiffs' assertions that *Pollard* "did not resolve any issue related to the CPD's inventory receipts [or] the use of 'Form 54'"(R. 218, Pls.' Resp. at 14.), Kenneth Pollard claimed he and other class members were issued inventory receipts, but never received notice that their property was available for return. (R. 225, Ex. A, *Pollard* Mot. at 1.) Similar to Plaintiffs, the *Pollard* plaintiffs claimed that the City had established a system that violated due process by providing arrestees with a "misleading notice." (R. 225, Ex. B, *Pollard* Resp. at 4.) Further, the Court has compared Pollard's allegedly misleading inventory receipt from 1983 and Nelson's inventory receipt from February 4, 2004, and finds that they are identical in all material respects. (R. 225, Ex. B, *Pollard* Resp.; R. 223, Ex. 3, Pls.' Resp.) Both even contain the same reference to CPD-34-554, which Plaintiffs call Form 54. Nelson's argument that his case is distinguishable from *Pollard* based on the fact that he brings additional state law claims also fails because the Court is only considering whether the due process claim is barred. *See Fort*, 1988 WL 94078, at *1.

15

Thus, the due process cause of action brought by the *Pollard* plaintiffs and the underlying facts of Plaintiffs' due process claims are identical for purposes of *res judicata*.

Turning to the third and final requirement for the application of *res judicata*, the presence of a final judgment on the merits, Plaintiffs contend that *res judicata* does not bar Nelson's claim because *res judicata* only applies to issues that have been "actually litigated." They argue that the "actually litigated" requirement is only met when the prior suit was resolved by final judgment. (R. 218, Pls.' Resp. at 13.) Plaintiffs characterize the consent decree as the result of a compromise entered prior to reaching a final judgment. Therefore, they argue that it cannot have preclusive effect because it was not a final judgment. (*Id.*) Additionally, Plaintiffs argue that the district court's approval of the *Pollard* consent decree "has no legal significance" because the judge in *Pollard* did not expressly state in the decree that he retained jurisdiction to enforce it. (*Id.* at 14.)

Contrary to Plaintiffs' arguments, it is well-settled that a consent decree in a class action is considered a final judgment on the merits. *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988) ("A consent decree is res judicata and thus bars either party from reopening the dispute by filing a fresh lawsuit."); *see also Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 903 (9th Cir. 2003) ("A final judgment is present when parties enter a consent decree . . . and the district court specifically entered a final judgment." (citation omitted)); *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 146 (6th Cir. 1993) ("Principles of res judicata . . . . apply not only to judgments, but also to consent decrees."). The cases cited by Plaintiffs in support of their argument that consent decrees are not entitled to *res judicata* effect pertain to issue preclusion, also called collateral estoppel, which is not at issue in this case. Collateral estoppel requires

16

additional showings beyond those required for *res judicata* that render it less likely to apply to consent judgments. *See, e.g., Arizona v. California*, 530 U.S. 392, 414 (2000) (setting forth the requirements for issue preclusion and stating that "consent judgments ordinarily support claim preclusion but not issue preclusion"). Accordingly, the court finds that the *Pollard* consent decree meets the third requirement for *res judicata*.

Plaintiffs' arguments concerning the jurisdiction of the district court to enforce the *Pollard* consent decree also fail. Unlike the settlement agreement in *Jessup v. Luther*, 277 F.3d 926, 927-29 (7th Cir. 2002), relied on by Plaintiffs, which was not embodied in a judicial order, the judge in *Pollard* issued a consent decree in the form of a judicial order, which is sufficient to retain the court's jurisdiction to enforce the terms of the decree. *See id.* at 929 ("Settlement agreements contain equitable terms, an injunction for example, will usually be embodied in a consent decree so that the judge will have continuing jurisdiction to enforce the terms.").

For the foregoing reasons, Nelson's claim for violations of due process is barred by the doctrine of *res judicata* to the extent that he seeks injunctive relief. If he wishes to pursue it, Nelson's remedy is to bring suit to enforce the *Pollard* consent decree. *See, e.g., Martin v. Davies*, 694 F. Supp. 528, 529 (N.D. Ill. 1988). Accordingly, Nelson's claims are dismissed as they pertain to his request for injunctive relief for the alleged violations of due process. However, Nelson's claims for damages for violations of due process and state law claims for conversion and replevin remain pending. Also, Gates's claims for violations of due process, conversion, and replevin are unaffected by this holding and may proceed.

## C. Demand for Interest

Defendants next request that the demand for interest contained in Count III be stricken.

Count III of the Fifth Amended Complaint presents Plaintiffs' class action claims, (R. 192, Fifth Am. Compl., Count III at 9-11), and Count III concludes with a prayer for relief in the form of the return of Plaintiffs' property; an order that Defendants pay Plaintiffs reasonable damages and interest from the time of seizure; and an award of reasonable costs and attorney's fees to Plaintiffs. (*Id.*, Count III at 11.) Defendants argue that under 30 Ill. Comp. Stat. 235/2(f) (2006), the City is entitled to retain any interest earned through the investment of Plaintiffs' money and that therefore, the request for interest should be stricken pursuant to Federal Rule of Civil Procedure 12(f). (R. 204-1, Defs.' Mem. at 13.) The Court declines Defendants' invitation to strike the request for interest because it is not the type of "redundant, immaterial, impertinent, or scandalous matter" contemplated by Rule 12(f). Moreover, section 235/2(f), on which Defendants rely, requires that funds held by a public agency be released, "at the earliest reasonable time, but in no case exceeding 31 days, after the private person becomes entitled to the receipt of them." The timing of Plaintiffs' entitlement to the funds, however, is the crux of the lawsuit, and thus, it would be premature to rule at this time whether and to what extent the statute applies to the present case. This issue can be considered at summary judgment or trial if and when the Court assesses damages against Defendants. Accordingly, Defendants' motion to strike is denied.

## CROSS-MOTIONS TO MODIFY THE CLASS

The Court turns next to the parties' cross-motions to modify the class definition.

### I.    Legal Standard

This Court set forth in greater detail the applicable legal standard for the certification of a class and the subsequent modification of a class in its November 10, 2004 decision. *Gates II*, 2004 WL 2583905, at *1. Suffice it to say, after certifying a class, the Court retains broad power

18

to modify the definition of the class if it believes that the class definition is inadequate. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995).

## II. Analysis

Following the Seventh Circuit's decision upholding the class certified in *Gates II*, Plaintiffs filed their fourth amended complaint in which they added claims for conversion and replevin under Illinois law and claims for return of the class's property under UDUPA. (R. 82, Fourth Am. Compl.) As previously noted, Plaintiffs moved for certification of a supplemental class on the basis that the new state law claims, unlike the due process claims in the initial complaint, did not require Plaintiffs to prove that the inventory receipts were false and misleading. (R. 90, Pls.' Mot. at 2.) The Court granted Plaintiffs' motion to certify a supplemental class without opinion on March 30, 2006, thereby certifying a supplemental class for Plaintiffs' state law claims (R. 143, Minute entry). The supplemental class included persons bringing state law claims, including conversion, replevin, and a claim under UDUPA. Based on the elements of these state law claims, the supplemental class included persons who were not issued inventory receipts as set forth in part e) of the originally certified due process class.

Following Plaintiffs' motion to certify a supplemental class, Defendants filed a motion to dismiss the fourth amended complaint. *Gates IV*, 435 F. Supp. 2d at 801. This Court granted the motion to dismiss with respect to the claim under UDUPA, but denied the motion with respect to the conversion and replevin claims. *Id.* In the decision, we found that the one-year statute of limitations set forth in the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101(a) (2006) ("Tort Immunity Act"), applied to Gates's claims for conversion and replevin. We held that Gates's claims for conversion and replevin accrued on

19

June 26, 2003, because this was the date on which Defendants no longer had a right to retain Gates's property. *Gates IV*, 435 F. Supp. 2d at 800. We concluded that Gates was not barred by the statute of limitations because he filed suit within one year of the June 26, 2003 accrual date. In sum, although the UDUPA claims were dismissed by *Gates IV*, the supplemental class certified on March 30, 2006, survived *Gates IV* and included persons with conversion and replevin claims. Hereinafter, the supplemental class will be referred to as the conversion and replevin supplemental class.

After filing the Fifth Amended Complaint, Plaintiffs filed a motion to further modify the class definition. (R. 194, Pls.' Mot.) In their motion, Plaintiffs' note that the current class definition only covers persons arrested on or before December 13, 2004. (*Id.* at 4, 8.) They request that the Court alter both the due process class and the conversion and replevin supplemental class definitions to include persons arrested between December 13, 2004, and the present. (*Id.* at 8-9.) The City Defendants oppose Plaintiffs' request because the named plaintiffs lack standing to represent persons arrested after December 13, 2004. (R. 201-1, Defs.' Resp. at 1, 9.) For their part, the City Defendants request that the Court change the start dates for the two classes, and also that the Court make substantive changes narrowing the classes. (*Id.*)

First, with regard to the substantive changes to the due process class proposed by the City Defendants, rather than exclude persons arrested for narcotics-related charges as recommended by the City Defendants, the Court instead divides up the due process class into two subclasses. One subclass consists of persons, represented by Nelson, who were arrested for narcotics-related offenses ("the narcotics due process subclass"). Based on the Court's findings regarding *res judicata*, these class members may only seek non-incidental damages and not injunctive relief.

20

The Court declines Defendants' invitation to include persons arrested for gambling or prostitution within the narcotics due process subclass because the *Pollard* consent decree did not cover persons arrested for gambling or prostitution. The other subclass will consist of persons, represented by Gates, who were arrested for non-narcotics-related offenses ("the non-narcotics due process subclass"). Defendants correctly point out that in *Gates II*, this Court noted that the due process class "includes only those arrestees who never received notice that their property was ready for return despite the fact that Defendants issued inventory receipts representing that they would be so notified." 2004 WL 2583905, at *3. Although the class definition set forth in *Gates II* implicitly contained this requirement, in order to avoid confusion, the Court modifies both of the due process subclass definitions to explicitly include this requirement.

Turning next to the substantive changes requested with regard to the conversion and replevin supplemental class, the Court agrees with Defendants that a demand element should be added. "[I]t has long been established in Illinois that a cause of action for conversion requires a plaintiff to demonstrate . . . *a demand by plaintiff for possession thereof.*" *Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988) (emphasis in original). Likewise, demand is required to succeed in bringing a claim for replevin "[i]f the defendant has lawful possession of the property" unless demand would be futile under the circumstances. *Firt Illini Bank v. Wittek Indus.*, 634 N.E.2d 762, 763 (Ill. App. Ct. 1994) (citing *Kee & Chappell Dairy Co. v. Penn Co.*, 126 N.E. 179, 182 (Ill. 1920)). Plaintiffs' do not argue that their property was unlawfully obtained, so to prevail on their claims, they must demonstrate either that they demanded the return of their property or that any such demand would have been futile. Because demand is a required element for both their conversion and replevin claims, the conversion and

replevin subclass is modified to include the requirement that the arrestee demanded return of the money seized, unless such demand would have been futile under the circumstances.

As for the start dates for the classes, the Court agrees with the parties that a two-year statute of limitations applies to the two due process subclasses such that it includes persons arrested on and after March 23, 2002. (R. 201-1, Defs.' Resp. at 6-7; R. 223-1, Pls.' Reply at 5.) The Court disagrees, however, with the parties' proposed start date for the conversion and replevin supplemental class. Based on the one-year statute of limitations set forth in the Tort Immunity Act, the parties propose that the conversion and replevin supplemental class should date back to June 26, 2002, one year before Gates's claims accrued on June 26, 2003. (R. 201-1, Defs.' Resp. at 7; R. 223-1, Pls.' Reply at 5.) The statute of limitations bars suit against local entities or their employees "unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101(a). Thus, the key date in the statute of limitations analysis is the date on which the suit was commenced, March 23, 2004, because a class member's claim is not barred if it accrued within one year prior to this date. Accordingly, arrestees whose claims accrued more than one year before filing, March 23, 2003, are barred by the statute of limitations and cannot be members of the conversion and replevin supplemental class.

The Court declines to modify the closing dates for class members. The Court finds that the Seventh Circuit's decision in *Gates III* has already settled this issue for the due process subclasses. In *Gates III*, the Seventh Circuit stated that Gates and Nelson are not proper plaintiffs to represent future arrestees seeking injunctive relief from the City's current policies, but that they are adequate representatives for persons alleging that the City's pre-December 14, 2004 inventory policies

22

violated due process. 430 F.3d at 432. Therefore, the Court declines Defendants' invitation to modify the due process subclasses to exclude persons after the date of Gates's arrest, January 14, 2003, as well as Plaintiffs' invitation to extend the subclasses beyond December 13, 2004. Accordingly, the due process subclasses are limited to persons arrested on or before December 13, 2004.

The Court turns next to the question of whether the conversion and replevin supplemental class should be limited to persons arrested before December 14, 2004. The conversion and replevin supplemental class was not affected by the Seventh Circuit's decision in *Gates III* because the claims for conversion and replevin were not added until after *Gates III* was decided. The Court has examined the elements necessary to state a claim for conversion and replevin under Illinois law in both *Gates IV*, 435 F. Supp. 2d at 801-02, and the present opinion. Plaintiffs are correct that proof of an unconstitutional policy is not a requirement for a claim for conversion or replevin. Therefore, the City's change in its policy on December 14, 2004, did not affect Gates's and Nelson's ability to bring claims for conversion and replevin and accordingly should not limit the class members. Plaintiffs' motion to modify the class to include persons arrested up until the present is granted with respect to the conversion and replevin supplemental class.

The final issues raised in the parties' cross motions for modification of the class definition relate to the restitution-based claims added in the Fifth Amended Class Action Complaint. These arguments are moot due to the Court's decision dismissing these claims. Therefore, Plaintiffs' and Defendants' motions to modify the class definition are denied with regard to the restitution-based claims.

23

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion to dismiss Plaintiffs' Fifth Amended Complaint as to Plaintiffs' restitution-based claims and Nelson's claims for injunctive relief. Thus, Plaintiffs' claims for unjust enrichment (Count IV), constructive trust (Count V), declaratory judgment (Count VI), and breach of fiduciary duty (Count VII) are dismissed with prejudice. Nelson's claim for injunctive relief arising from his due process claim is dismissed. Nelson may proceed with his claim for damages arising from violations of due process and his state law claims for conversion and replevin. Gates may also proceed with his claims for violations of due process and his state law claims for conversion and replevin.

Plaintiffs' motion to modify the class definition is granted in part and denied in part. Likewise, Defendants' motion to modify the class definition is granted in part and denied in part. For the sake of clarity the Court notes that two classes exist, the originally certified due process class and the conversion and replevin supplemental class. The due process class has been divided into the following two subclasses:

(1)     All those persons who, after March 23, 2002, and before December 14, 2004, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; f) the arrestee never received notice that the property was ready for return;

24

g) the money has not been returned to the arrestee; and I) the arrestee was arrested for a narcotics offense.

(2)  All those persons who, after March 23, 2002, and before December 14, 2004, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; f) the arrestee never received notice that the property was ready for return; g) the money has not been returned to the arrestee, and I) the arrestee was not arrested for a narcotics offense.

The conversion and replevin supplemental class is set forth as follows:

All those persons who, after March 23, 2003, had property taken from them upon their arrests by Chicago police officers provided: a) the criminal charges against them have been resolved in the trial court; b) no forfeiture action was commenced against the seized property; c) the time for filing a forfeiture action has expired; d) the property was not inventoried as evidence in any criminal investigation; the arrestee either demanded possession of the money seized or demand would have been futile under the circumstances; and e) the money has not been returned to the arrestee.

The Court remains hopeful that this opinion will serve to guide the parties toward a long

25

awaited resolution of this case. A status hearing will be held on November 1, 2006, at 9:45 a.m. in open court to set a firm trial date for this lawsuit.

**ENTERED**

**Judge Ruben Castillo**

**DATED:** 10/16/06