# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ELTON GATES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 04 C 2155** |
| v. | ) | |
| | ) | **Magistrate Judge Nan R. Nolan** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elton Gates ("Gates") and Luster Nelson ("Nelson") (collectively, "Plaintiffs") initiated this class action lawsuit under 42 U.S.C. § 1983 against the City of Chicago ("the City") and Chicago Police Superintendent Philip J. Cline (collectively, "Defendants").[1] (No. 1, Compl.) Plaintiffs challenge the constitutionality of the City's policies governing the inventorying and return of money seized from individuals upon their arrest by the Chicago Police Department. (No. 192, Fifth Amended Compl.) Pursuant to 28 U.S.C. § 636(c), the parties have now consented to the jurisdiction of the United States Magistrate Judge in this matter. (No. 514, Joint Consent to Exercise of Jurisdiction of U.S. Magistrate Judge.) Currently before the Court is Plaintiffs' motion for certification of a supplemental class under Federal Rule of Civil Procedure ("Rule") 23(b)(3). (No. 480, Pls.' Mot. for Certification of Supplemental Class ("Pls.' Supplemen-

---

[1] Plaintiffs initially brought suit against several individual Chicago police officers as well. However, in 2007, the District Court granted the individual officer defendants' motion for summary judgment in its entirety. *Gates v. Towery*, 507 F. Supp. 2d 904, 908 (N.D. Ill. 2007).

tal Class Mot.").) For the reasons set forth below, Plaintiffs' motion is hereby granted with modification.

## I. BACKGROUND

This is the eighth opinion to be issued in this case, including six opinions from the Northern District of Illinois and two decisions handed down by the Seventh Circuit Court of Appeals. *See Gates v. Towery*, 331 F. Supp. 2d 666 (N.D. Ill. 2004) ("*Gates I*") (partially granting and partially denying Plaintiffs' motion to reconsider dismissal of their complaint); *Gates v. Towery*, No. 04 C 2155, 2004 WL 2583905 (N.D. Ill. Nov. 10, 2004) ("*Gates II*") (granting Plaintiffs' motion for class certification with modification), *aff'd*, 430 F.3d 429 (7th Cir. 2005) ("*Gates III*"); *Gates v. Towery*, 435 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Gates IV*") (partially granting and partially denying Defendants' motion to dismiss); *Gates v. Towery*, 456 F. Supp. 2d 953 (N.D. Ill. 2006) ("*Gates V*") (redefining the certified class and partially granting Defendants' motion to dismiss); *Gates v. Towery*, 507 F. Supp. 2d 904 (N.D. Ill. 2007) ("*Gates VI*") (dismissing certain claims and granting summary judgment in favor of Defendants on remaining claims); *Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2010) ("*Gates VII*") (holding that Plaintiffs' restitution claims were properly dismissed as moot, but that the grant of summary judgment to Defendants on the due process "notice" and "procedures" issues was in error). The factual background and extensive procedural history of this case have been outlined by both the District Court and the Seventh Circuit in past opinions and will not be recounted here except as pertinent to the pending motion. *See, e.g., Gates V*, 456 F. Supp. 2d at 957-58; *Gates VII*, 623 F.3d at 391-94.

Plaintiffs initially moved for class certification in May of 2004. (No. 11, Pls.' Mot. for Class Certification.) In response, the District Court certified a class on November 9, 2004 pertaining to Plaintiffs' federal due process claims.[2] *Gates II*, 2004 WL 2583905, at *9. This class was affirmed by the Seventh Circuit in *Gates III*, 430 F.3d at 429, and subsequently modified in *Gates V*, 456 F. Supp. 2d at 970. In *Gates V*, the District Court divided the original due process class into two subclasses, one for non-narcotics arrestees and one for narcotics arrestees. 456 F. Supp. 2d at 970. Plaintiff Gates was designated the representative of the non-narcotics subclass and Plaintiff Nelson was to represent the narcotics subclass. *Id.* at 968-70. These due process class definitions have remained unchanged since *Gates V* and are defined as follows:

> A narcotics [or non-narcotics] class, composed of all those persons who, after March 23, 2002, and before December 14, 2004, had property taken from them upon their arrests by Chicago police officers provided: (a) the criminal charges against them have been resolved in the trial court; (b) no forfeiture action was commenced against the seized property; (c) the time for filing a forfeiture action has expired; (d) the property was not inventoried as evidence in any criminal investigation; (e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; (f) the arrestee never received notice that the property was ready for return; (g) the money has not been returned to the arrestee; and (h) the arrestee was [not] arrested for a narcotics offense.

*Id.* at 969-70.

Following the 2010 remand of this case from the Seventh Circuit in *Gates VII*, Plaintiffs have sought to supplement the prior class certification order. (No. 480, Pls.'

---

[2] During the early stages of litigation the District Court had also certified a conversion and replevin class under state law, but those claims have been dismissed or decertified in subsequent proceedings. *See Gates V*, 456 F. Supp. 2d at 970; *Gates VI*, 507 F. Supp. 2d at 924-25; No. 442, Minute Entry, Feb. 8, 2008.

Supplemental Class Mot. at 1.) In *Gates VII*, the Seventh Circuit held that summary judgment had been granted to Defendants in error as to Plaintiffs' due process claims regarding the inventorying and return of money seized from them by Chicago police officers. 623 F.3d at 413. In so holding, the court made clear that "meaningful notice" and "adequate procedures" are two separate and distinct due process questions and that Plaintiffs had adequately raised and preserved both issues. *Id*. at 404-05. Based on this recent clarification of the due process questions at issue, Plaintiffs now propose a new due process "procedures" class to supplement the originally certified class that focused on the due process "notice" issues.

At present, the parties have reached an agreement to settle the bulk of this case, and substantial steps towards the preliminary approval of this proposed settlement have already been taken. The questions regarding the certification and legal merit of Plaintiffs' proposed supplemental class remain the last unresolved issues in the case. All parties have indicated their commitment to proceeding with the proposed settlement while simultaneously working towards the resolution of these remaining issues. Additionally, the parties have stated that the disposition and/or appeal of the supplemental class issues will not alter or delay the settlement that is currently underway.

## II. LEGAL STANDARDS

Under Rule 23(c)(1)(C), a court retains broad power to modify the definition of a previously certified class at any time before final judgment if it believes that the class definition is inadequate. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or de-

4

nies class certification may be altered or amended before final judgment."); William B. Rubenstein, Alba Conte & Herbert B. Newberg, 3 Newberg on Class Actions § 7:47 (4th ed. Supp. 2010) ("Because class rulings may be altered or amended at any time before a decision on the merits, class rulings are often reconsidered, and subsequently affirmed, altered, modified, or withdrawn."). Reconsideration of an original class ruling typically occurs as a result of a change in circumstances, *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006), and "[i]n the absence of materially changed or clarified circumstances . . . courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class[.]" Newberg on Class Actions § 7:47; *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.4 (3d ed. Supp. 2010) ("[A]lthough the court's initial decision under Rule 23(c)(1) . . . may be the final resolution of the [class certification] question, it is not irreversible and . . . the class description [can be] altered if later events suggest that it is appropriate to do so."). However, the decision to alter or amend a class-certification order is discretionary, *Robin v. Doctors Officenters Corp.*, 686 F. Supp. 199, 203 (N.D. Ill. 1988), and a court is not required to revise a previous class-action order even when "circumstances surrounding its initial determination change." Wright, Miller & Kane § 1785.4.

Although Rule 23 gives a court discretion in deciding whether to amend or alter a previous class certification order, the party seeking modification still bears the burden of showing that the proposed class meets the federally mandated requirements for class certification. This first requires the moving party to demonstrate that the pro-

posed class satisfies all of the elements of Rule 23(a): (1) the class must be so numerous that joinder of the class members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class as a whole ("typicality"); and (4) the representatives must be willing and able to fairly and adequately protect the class interests ("adequacy"). Fed. R. Civ. P. 23(a); *see also Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Gates II*, 2004 WL 2583905, at *1. A judge "should make whatever factual and legal inquiries are necessary" to ensure that all four elements are met. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

If the proposed class meets these Rule 23(a) prerequisites, the moving party must further show that the class satisfies at least one of the Rule 23(b) requirements. Fed. R. Civ. P. 23(b); *see also Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Gates II*, 2004 WL 2583905, at *1. In this case, Plaintiffs seek certification under Rule 23(b)(3) which provides for class certification if the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In deciding this issue, courts are to consider: (1) class members' individual interests in controlling the course of litigation; (2) existing litigation concerning the same controversy; (3) the effects of concentrating litigation in the current forum; and (4) the difficulties of managing a class action. *Id.*

# III. ANALYSIS

Plaintiffs seek certification of a supplemental class because they maintain that the currently certified class "do[es] not fully resolve the important issues of law in this litigation." (No. 480, Pls.' Supplemental Class Mot. at 2.) Specifically, Plaintiffs contend that while the existing class addresses the adequacy of the *notice* provided to arrestees regarding the return of their inventoried property, a supplemental class is necessary to address the adequacy of the City's *procedures*. (*Id.*) As a primary basis for this argument, Plaintiffs rely upon the Seventh Circuit's opinion in *Gates VII*. In assessing Plaintiffs' due process challenge to the City's inventorying policies, the Seventh Circuit emphasized the two distinct elements of Plaintiffs' argument: (1) "the City did not provide meaningful notice of its inventory and property return procedures"; and (2) "the City failed to provide adequate procedures for the return of [arrestees'] money." *Gates VII*, 623 F.3d at 394. The Seventh Circuit thereby clarified the issues before the Court in this case, and rejected Defendants' claim that Plaintiffs had waived the due process "procedures" arguments. *Id.* at 404-05. Plaintiffs thus contend that the certification of a supplemental "procedures" class is appropriate at this time to consider whether the "City is constitutionally obligated to return all inventoried cash at the conclusion of the underlying criminal cases, unless the City secures a court order allowing it to retain the inventoried cash beyond the final disposition." (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 5.)

In their most recent brief supporting this new "procedures" class, Plaintiffs proposed two subclasses that mirror the narcotics and non-narcotics distinction in the cur-

rently certified "notice" class. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 6.) However, the Court has been informed that in the time since the last briefing on this issue, the parties have agreed to resolve the non-narcotic claims outside of court. Therefore, with the agreement of all parties, this opinion will focus on the certification of a "procedures" class for *narcotics* arrestees represented by Plaintiff Nelson.

For such a narcotics class, Plaintiffs offer four main changes to the current "notice" narcotics subclass.[3] (*Id*. at 12.) First, the end date of the proposed "procedures" class would be extended through the present date.[4] (*Id*.) Second, the proposed class definition does not exclude the claims of arrestees whose property was inventoried as evidence. (*Id*.) Third, the proposed class definition adds the requirement that the City has not secured a court order to retain the property at issue. (*Id*.) Finally, the proposed class would eliminate the current class definition elements related to the content of the no-

---

[3] Along with the four primary alterations discussed above, the proposed class definition also includes two additional changes: (1) the proposed class encompasses those that had "money" taken upon their arrest, rather than "property" as in the currently certified class; (2) the proposed class requires that individuals have not yet been returned their "money, plus interest," whereas the original class only spoke of "money." (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 12.) However, these changes are minor, and as Defendants have not objected to them, they will not affect the subsequent legal analysis.

[4] As of November 15, 2010, the City implemented new inventory return procedures for non-narcotics related arrests that both parties agree satisfy all due process requirements. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 6-7.) According to the attorneys for Defendants, the City is currently in the process of implementing corresponding procedures for narcotics arrests but has not yet executed the change. Therefore, assuming Plaintiffs agree that the new narcotics procedures satisfy due process, the end date for the new "procedures" class will eventually be defined as the date the City applies these new procedures to narcotics related arrestees. For now, though, the class would extend through the present time.

tice received by the class member. (*Id.*) The proposed "procedures" narcotics class represented by Nelson would therefore consist of:

> All those persons who had money taken from them upon their arrests by Chicago police officers for a narcotics related arrest from March 23, 2002 to the present provided: (a) an inventory receipt was issued to them for the cash that was seized; (b) the criminal charges that resulted in that arrest have been resolved in the trial court; (c) no forfeiture action was commenced against the seized money; (d) the time for filing a forfeiture action has expired; (e) the City of Chicago did not secure a court order to retain the property beyond the final resolution of the criminal charges; and (f) the inventoried money, plus interest accruing from the date the criminal charges were resolved, has not been returned to the class member.

(*Id.*)

In opposing Plaintiffs' motion, Defendants argue that the supplemental class motion is "fatally flawed" for four basic reasons. First, Defendants claim that the proposed class does not comply with the specific requirements of Rule 23. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 2; No. 526, Defs.' Additional Resp. to Pls.' Mot. For Certification of a Supplemental Class at 5.) Second, Defendants contend that Plaintiffs have failed to establish the requisite showing of changed circumstances to support modification of the existing certified class, and have waived their opportunity to revisit the class definition issue by failing to appeal previous rulings concerning the terminus date for the class. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 2.) Third, Defendants argue that the claims of the proposed supplemental class are not viable as a result of the recent settlement of related litigation and the resulting changes to City inventorying policy. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 1-2; No. 526, Defs.' Addi-

tional Resp. to Pls.' Mot. For Certification of a Supplemental Class at 3.) Finally, Defendants claim that additional discovery is required as to the "procedures" issues because the parties have been litigating a "notice" class. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 2.) The Court will address each of these arguments in turn.

## A. Rule 23 Class Certification Requirements

Defendants' primary Rule 23 argument is that Nelson does not share the requisite "commonality" and "typicality" with the proposed "procedures" class. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 14-15; No. 526, Defs.' Additional Resp. to Pls.' Mot. For Certification of a Supplemental Class at 2.) Because this Court cannot certify a class unless *all* Rule 23 requirements are satisfied, we choose to consider more than just the commonality and typicality elements challenged by Defendants. Specifically, we assess whether the proposed class meets all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Many of these class certification issues are very similar to those before the District Court in *Gates II*, and this opinion will make reference back to *Gates II* accordingly. 2004 WL 2583905, at **4-9.

### 1. *Rule 23(a)(1) – Numerosity*

As noted above, the numerosity requirement states that a proposed class must be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Plaintiffs are not required to specify the exact number of class members as long as they have made a good

faith estimate, and "[w]here the class is large, the numbers alone are dispositve of the impracticability of joinder." *Thillens, Inc. v. Community Currency Exchange Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983); see also *Gates II*, 2004 WL 2583905, at *5; *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662-63 (N.D. Ill. 1996). Courts are entitled to make "common sense assumptions" when making numerosity determinations. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662-63 (N.D. Ill. 1996).

In this case, Plaintiffs state that the Chicago Police Department takes and inventories the money of at least several hundred arrestees annually, and the Defendants have not challenged this assertion. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 2; No. 480, Pls. Supplemental Class Mot. at 6.) The proposed supplemental class spans almost a decade and includes a number of years that are not covered at all by the current "notice" class or by certified classes in separate related litigation. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 2.) Thus, the number of potential supplemental class members includes at least hundreds of arrestees, and joinder of such a number of individuals must be considered impracticable. *See Johnson v. Brelje*, 482 F. Supp. 121, 123 (N.D.Ill.1979) ("Although there is no hard and fast rule as to when the size of a class renders joinder impracticable, plaintiff's allegation that the classes include hundreds of persons, an allegation that is uncontroverted by the defendants, is enough to satisfy this requirement."); *Cullen v. United States*, 372 F. Supp. 441, 447 (N.D.Ill.1974) ("An attempt to join at least 325 persons in one proceeding no doubt would stretch the facili-

ties and abilities of this Court beyond their elastic limit."). The Court therefore finds that the proposed supplemental class meets the Rule 23 numerosity requirement.

### 2. *Rule 23(a)(2) – Commonality*

Rule 23 also requires named plaintiffs to show that there are questions of law or fact common to the proposed class. Fed. R. Civ. P. 23(a)(2). As an initial concern, Defendants correctly point out that Plaintiffs' proposed supplemental class includes arrestees whose seized money was inventoried as evidence at the time that it was taken. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 12-13.) This differs from the currently certified due process "notice" subclasses, which expressly admit only those arrestees whose "property was *not* inventoried as evidence in any criminal investigation." *Gates V*, 456 F. Supp. 2d at 969-70 (emphasis added). Defendants have therefore reasserted their previously successful argument that commonality issues would arise if the class includes those arrestees whose property was inventoried as evidence. This is because such arrestees may not be the rightful owners of the property at issue, such as in the case of burglary or theft. (No. 32, Defs.' Mem. in Opp'n to Class Certification at 10-11; No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 13.) Plaintiffs agreed to the exclusion of these individuals at the initial class certification stage in order to "avoid any … problems posited by Defendants" regarding significant claim differences between those arrestees that have actual rights to seized property and those that do not. (No. 35, Pls. Reply Mem. in Support of Class Certification at 10.)

While Plaintiffs have not agreed to the same exclusion for the proposed supplemental class, they also have not offered any arguments as to why the same commonality problems would not exist if the claims of arrestees whose money was inventoried as evidence were included in the new class. Accordingly, the Court finds that this exclusion should be applied. The "procedures" class definition will include the additional requirement that the class will consist of only those arrestees whose "property was not inventoried as evidence in any criminal investigation."

With this modification in place, we turn now to whether the proposed class demonstrates sufficient commonality to satisfy Rule 23. As explained above, in order to satisfy the Rule, plaintiffs must show that there are questions of law or fact common to the proposed class. Fed. R. Civ. P. 23(a)(2). At a minimum, the Rule requires a showing of at least one such common question of law or fact. *Gates II*, 2004 WL 2583905, at *5; *Nat'l Org. for Women, Inc. v. Scheidler*, 172 F.R.D. 351, 360 (N.D. Ill. 1997). As explained in *Gates II*, if the primary allegation is an ongoing policy of unconstitutional activity, some factual variations among class members will be considered acceptable. 2004 WL 2583905, at *5; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). "Indeed, factual variations among class members' experiences will not defeat class certification so long as there is a common nucleus of operative fact." *Scheidler*, 172 F.R.D. at 360; *see also Rosario*, 963 F.2d at 1018 (asserting that a common nucleus of operative fact is usually enough to satisfy the commonality requirement).

Plaintiffs state that the common question is whether the City's inventory return procedures unconstitutionally place the burden of proving a valid claim to property on

the property owners themselves. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 3.) Plaintiffs argue that the "City is constitutionally obligated to return all inventoried cash at the conclusion of the underlying criminal cases, unless the City secures a court order allowing it to retain the inventoried cash beyond the final disposition." (*Id.* at 5.) Because the proffered date range for the supplemental class ensures that every member of the proposed class was subject to the same City property return procedures, Plaintiffs claim that the facts and constitutional questions at issue are common to all class members. (*Id.* at 3.)

Although factual distinctions undoubtedly exist as to individual class members and their responses to City policies, because "the allegedly unconstitutional practice was applied to all of the members of the proposed class, the proposed … claims arise from the same nucleus of operative fact." *Gates II*, 2004 WL 2583905, at *6 (citing *Hispanics United of DuPage Cty. v. Village of Addison, Ill.*, 160 F.R.D. 681 (N.D. Ill. 1995)). The central issue in the case does not turn on the facts or actions of individual arrestees; the issue is whether Defendants have unconstitutional procedures in place that violate class members due process rights. Accordingly, the Court finds sufficient commonality among the proposed class members.

### 3. Rule 23(a)(3) - Typicality

To satisfy Rule 23 class certification requirements, named plaintiffs must also demonstrate that their claims are typical of the claims of the proposed class. Fed. R. Civ. P. 23(a)(3). To meet this requirement, plaintiffs must show that their claims arise from "the *same* event or practice or course of conduct that gives rise to the claims of other

class members . . . and [that their] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and citations omitted). While the purpose of the requirement is to ensure that the named plaintiffs' claims "have the same essential characteristics as the claims of the class at large," it does not require that all plaintiffs present identical factual circumstances. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *see also Scheidler*, 172 F.R.D. at 361 ("similarity of legal theory may control even in the face of different facts").

Plaintiffs *contend* that Nelson's "procedures" claim is typical of the proposed supplemental class. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 3-4.) They point to language from the Seventh Circuit opinion in *Gates VII* and claim that Nelson "w[as] entitled to the immediate return of [his] money at the conclusion of the criminal cases against [him] and after the time for forfeiture had passed because the City failed to establish any right to continue holding [his] money." *Gates VII*, 623 F.3d at 405. Plaintiffs then maintain that the facts underlying this claim are that the Chicago police: (1) arrested Nelson; (2) took and inventoried his money; (3) did not commence forfeiture proceedings against him; (4) did not return his money after the disposition of his criminal cases; (5) refused to release his money without certain police or City-issued releases; and (6) did not secure a court order to retain his money. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 3-4.) Because these same circumstances apply to every member of the

proposed supplemental class, Plaintiffs assert that sufficient typicality exists for class certification. (*Id.*)

Defendants first argue that Nelson's "procedures" claims cannot be typical of the proposed class because Plaintiffs do not actually allege any such claims. Defendants state that "there are no allegations in [Plaintiffs' Fifth Amended Complaint] supporting the proposed 'procedures' class." (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 13.) However, the language of *Plaintiffs'* Fifth Amended Complaint plainly includes specific allegations that directly relate to the sufficiency of the City's inventory return procedures. The Complaint alleges that "[c]ommon questions of law and fact" include: "[w]hether the Defendants are required to provide the Plaintiff with a prompt forfeiture hearing or must release the money to the property owner immediately following the final disposition of the criminal charges;" "[w]hether the Defendants must return all seized property, which is not contraband per se, at the conclusion of the criminal case unless a timely forfeiture proceeding is filed against the property;" and "[w]hether Defendants require arrestees from whom property was seized to secure a release order from the arresting officer before the property will be returned to the rightful owner of the property." (No. 192, Fifth Am. Compl. ¶¶ 28(a), (c), (g).) Moreover, Defendants' argument clearly fails following *Gates VII*, in which the Seventh Circuit held that Plaintiffs properly preserved both the "meaningful notice" and "adequate procedures" aspects of their due process claim. The issue has been resolved, and Defendants' first argument is without merit.

Defendants next claim that Nelson cannot share typicality with arrestees that did not receive the same notice of inventory policies as him. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 14.) Individuals arrested by the Chicago Police Department receive inventory receipts at the time their property is taken. These receipts include instructions that arrestees must follow in order to re-collect their property, and the instructions have been revised by the City three times in the years since Nelson was arrested. The first such revision took effect on December 14, 2004, and Defendants argue that this must therefore be the end date for the class regardless of whether the class is defined in "notice" or "procedures" terms. (*Id.*)

The Court rejects this argument, however, because it fails to acknowledge the different factual circumstances and theories of liability underlying the "notice" and "procedures" classes. For the "notice" class, the form of the notice may be central to the issue, but for the "procedures" class, notice is irrelevant to the claim. In fact, Plaintiffs' proposed class definition has eliminated all references to the content of notice received by the class member. It does not matter if the notice of inventory return procedures an arrestee received was "meaningful;" the question is whether the procedures themselves were inadequate. (No. 503, Pls.' Reply in Support of Motion to Certify a Supplemental Class at 9.) Because the City has never changed its inventoried money return procedures for narcotics arrestees in all the years since Nelson was arrested, he shares typicality with those arrestees included in Plaintiffs' proposed class. All proposed class members were forced to submit to the same allegedly unconstitutional procedures for the return of their inventoried money.

Finally, the City argues that Nelson's claims do not share typicality with the proposed class members' claims because the City has already offered to return the money taken from Nelson "in order to avoid unjust enrichment." (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 14.) Defendants contend that Plaintiffs cannot now argue that the City should be required to obtain a court order to retain inventoried money because that argument has been mooted by the City's offer to return Plaintiffs' seized funds. (*Id.* at 15-16.) Defendants analogize this claim to the restitution claims that the District Court dismissed as moot in *Gates VI* because the City had tendered full payment to the Plaintiffs. (*Id.*)

Contrary to Defendants' assertions, though, Nelson's claims related to "adequate procedures" are not moot. For the restitution claims, Plaintiffs had sought the return of their seized property and nothing more. *Gates VII*, 623 F.3d at 412-13. Therefore, Defendants' proffered return of Plaintiffs' money was sufficient under Illinois law to satisfy the claim. *Id.* For the due process claim of "inadequate procedures," however, the tender of only the original amount of money inventoried by Defendants is insufficient to meet Plaintiffs' demand for damages, which includes interest, compensatory damages, and attorneys' fees. *See Gates III*, 430 F.3d at 431-32. "To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' *demands*." *Id.* at 432. Defendants have not done so for the "procedures" claim and, therefore, the suit is not moot. For all of these reasons, Nelson's "adequate procedures" claims have "essentially the same characteristics as the claims of the class at large," *Muro*, 580 F.3d at 492, and the Court concludes that Nelson's claims are typical of the proposed class.

*4. Rule 23(a)(4) – Adequacy*

The adequacy requirement of Rule 23 asks named plaintiffs to demonstrate that they can, and will, fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). To that end, plaintiffs must show "that their interests coincide with the interest of the rest of the class, and that their attorneys are prepared to vigorously prosecute the action." *Gates II*, 2004 WL 2583905, at *7 (citing *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 154 (N.D.Ill. 1982)). Here, Defendants do not dispute that Nelson and Nelson's counsel will adequately represent the class. Further, as Nelson and his attorneys have been effectively representing class interests for the past seven years, the Court sees no reason to find them inadequate to do so at this late stage of litigation. Consequently, we find that Rule 23(a)(4) is satisfied.

*5. Rule 23(b)(3)*

Plaintiffs claim that their proposed supplemental class satisfies the requirements of Rule 23(b)(3). To qualify for certification under this subsection the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making a Rule 23(b)(3) determination, courts are encouraged to consider factors such as the class members' individual interests, existing litigation, the appropriateness of the current forum, and the difficulties of managing a class action. *Id.*

Plaintiffs state that because a single question of law is "outcome determinative" for the supplemental class, Rule 23(b)(3) is satisfied. (No. 522, Pls.' Reply to Defs.' Sup-

plemental Resp. to Pls.' Supplemental Class Mot. at 4-5.) The Court agrees. Similar to the "notice" class at issue in *Gates II*, the issue of liability for the proposed "procedures" class turns entirely on the constitutionality of a City policy. The core issue is whether the City is constitutionally obligated to return all inventoried cash to arrestees at the conclusion of their underlying criminal cases. (*Id.*) This common question of liability will predominate even in the face of secondary issues or factual differences for purposes of class certification. *See Gates II*, 2004 WL 2583905, at *7 (citing *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003)).

Additionally, a class action should be considered the superior method in which to litigate this dispute because it protects the rights of those who lack the resources to bring their adversaries into court on their own. *See Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Small recoveries often do not provide sufficient incentive for an individual to pursue his rights on his own behalf. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997). In this case, Plaintiffs state that each individual claim is likely to be small, "usually less than one hundred dollars." (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 5.) As such, the certification of this proposed class "may be the only mechanism by which those individuals can seek review of the allegedly unconstitutional policy." *Gates II*, 2004 WL2583905, at *9. Therefore, we find that a class action is the superior litigation method for this dispute and that Plaintiffs' proposed supplemental class meets all necessary Rule 23 requirements.

## B. Changed Circumstances and Timing Issues

In addition to their Rule 23 objections, Defendants have also raised two procedural arguments as to why they believe the Court should decline to certify the supplemental class at this time. First, Defendants claim that there are no changed circumstances to support modification of the existing class. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 9-12.) Second, Defendants argue that the Plaintiffs have waived their right to pursue a "procedures" class by failing to raise the issue in prior appeals. (*Id.*)

A court possesses broad discretionary power to reconsider the definition of a previously certified class at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C); *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995). As Defendants correctly contend, the modification of an original class ruling typically occurs as a result of materially changed or clarified circumstances. *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006); Newberg on Class Actions § 7:47. In this case, we find that the Seventh Circuit's opinion in *Gates VII* should be considered such an example of changed circumstances. While in many instances the remand of a case to a district court on issues unrelated to class certification will not constitute the requisite "changed circumstances," here, the Seventh Circuit's thorough and well-reasoned opinion clarified several key issues pertaining to Plaintiffs' due process claims and thus warrants a reconsideration of the District Court's previous class certification order.

Prior to *Gates VII*, the "procedures" element and the "notice" element of Plaintiffs' due process claim had not been treated as distinct issues. Instead, the primary focus of Plaintiffs' challenge to the City's inventorying policy was determined to be inadequate notice, and the return procedures were regarded as a secondary issue related to that claim, as well as to Plaintiffs' state-law conversion claim. *See Gates VI*, 507 F. Supp. 2d at 908 ("The issues in this case are whether arrestees are provided constitutionally adequate notice about the process by which they may reclaim money inventoried by the Chicago Police Department ("CPD") at the time of arrest, and also whether the CPD unlawfully converted the arrestees' property by ignoring their demands for the return of the property."). *Gates VII*, however, clarified that "meaningful notice" and "adequate procedures" are two separate and distinct issues. *Gates VII*, 623 F.3d at 394, 405. Defendants disagree and argue that *Gates VII* did not alter or clarify any issues in the case because the Seventh Circuit discussed "procedures . . . only to the extent 'procedures' issues were relevant to the notice provided to the arrestees." (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 11.) However, this assertion is clearly belied by the opinion itself, in which the two issues were separately considered. *See Gates VII*, 623 F.3d at 405 ("We have already concluded that notice of the procedures for reclaiming seized money may be inadequate and that the district court was premature in granting summary judgment in favor of the City on that point. We now consider whether the process itself was adequate to satisfy the Constitution.").

The Seventh Circuit also clarified an issue "lurking in this case" that had caused confusion over the proper treatment of the "procedures" issue in the District Court:

"the difference between regular procedures for the return of property and remedies to pursue if property is not returned according to those regular procedures." *Id.* at 410. The parties had argued over whether 725 ILCS 5/108-1, et seq. (2011) was an available remedy for class members seeking return of their property. However, the Seventh Circuit explained that the availability of remedies was not the correct issue to consider:

> Arrestees should require a post-deprivation 'remedy' . . . only when random and unauthorized conduct by City officials results in a deprivation of their property. The appropriate question in the first instance is whether the City, having taken the property of arrestees without a warrant and having retained it until the conclusion of criminal proceedings, has a *procedure* for the return of that property that comports with due process.

*Gates VII*, 623 F.3d at 410. Prior to *Gates VII*, the parties and the District Court had failed to make this important distinction between "regular procedures" and "remedies." Because of the key clarifications on this issue of remedy as well as on the distinct "notice" and "procedures" elements of Plaintiffs' due process claim, *Gates VII* constitutes sufficiently changed circumstances to warrant a supplement to the previously certified class.

This finding is not altered by Defendants' second procedural argument opposing certification, namely that Plaintiffs waived their right to pursue a "procedures" class by failing to raise the issue in prior appeals. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 12.) As previously discussed, a court is free to amend the class certification order until the case has proceeded to final judgment on the merits. *See* Fed. R. Civ. P. 23(c)(1)(C). This is a power granted to the court, not one that is waived by plaintiffs. Therefore, because summary judgment in this case was vacated by

*Gates VII*, 623 F.3d at 413, the case has not proceeded to final judgment and the court remains free to reconsider class definitions.[5] Plaintiffs' proposed supplemental class is not barred by the procedural or timing issues raised by Defendants.

## C. Settlement of Related Litigation and Resulting Changes to City Policy

Defendants next argue that Plaintiffs' proffered "procedures" class is not viable following settlement of the related class action *Kennedy v. City of Chicago*, No. 06 C 4914 (N.D. Ill.) ("*Kennedy*"). The *Kennedy* case was filed in 2006 before Judge Darrah in the Northern District of Illinois while *Gates* was already pending. (Compl., *Kennedy v. City of Chicago*, No. 06 C 4914, Docket No. 1.) Much like the *Gates* Plaintiffs, the named plaintiffs in *Kennedy* alleged due process violations caused by the City's inventory policies regarding property taken from arrestees by the Chicago Police Department. (*Id.*) The *Kennedy* class certified by Judge Darrah is similar to the *Gates* "notice" and proposed "procedures" classes but with two key differences: (1) the *Kennedy* class consists of only non-narcotic arrestees; and (2) the *Kennedy* class spans from September 11, 2001 through October 16, 2009 and thus overlaps with the time frames of both *Gates*

---

[5] Defendants only support for their "waiver" argument is *Karraker v. Rent-a-Center, Inc.*, No. 02-2026, 2005 WL 2001511 (C.D. Ill. Aug 12, 2005), in which the court denied the plaintiffs' motion to amend the scope of the class after the case was remanded from the Seventh Circuit. Aside from the lack of precedential value of *Karraker*, a case decided by a district court in the Central District of Illinois, the facts here are clearly distinguishable. In *Karraker*, the plaintiffs sought to supplement its current class with respect to a claim that had been dismissed as untimely by the district court, and that dismissal was ultimately affirmed by the Seventh Circuit. *Id.* at *2. Additionally, the specific proposed supplement to the class was one which the court had previously denied, and the plaintiffs here had not appealed that denial even while appealing the dismissal of the claim itself. *Id.* at *3. Further, at no point did the district court find that the plaintiffs had "waived" their right to pursue a class certification amendment, the court simply declined to exercise its discretion to supplement the class upon remand.

classes. In all other important respects, the classes from the two separate cases are nearly identical.[6] (See No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 5.)

*Kennedy* officially settled on March 8, 2011, and Defendants contend that the settlement terms dictate that Plaintiffs' current motion must be denied for two basic reasons. First, Defendants argue that the proposed supplemental class does not properly address the fact that the *Kennedy* Settlement includes a mandatory release preventing many arrestees from bringing claims against the City regarding the inventorying of their money. (*Id.* at 5-6.) Second, Defendants believe that the new notices and new procedures that the City implemented as part of the *Kennedy* settlement resolve all due process issues presented by the proposed "procedures" class. (*Id.* at 7-9.)

### 1. The Kennedy *Settlement Releases and Double Recovery*

The language of the *Kennedy* Settlement specifically releases all claims of the *Kennedy* class members "arising out of, relating to, or in connection with the inventorying of their money by [the Chicago Police Department] for investigation and/or evidence from September 11, 2001 to October 16, 2009." (*Id.*, Ex. 1 §§ 7.1, 1.3.) The only excep-

---

[6] Officially, the *Kennedy* certified class included:

> Persons from whom money was seized in connection with their arrest by a Chicago police officer, and who were subsequently charged with a criminal offense between September 11, 2001 and October 16, 2009, provided that: (a) the person was issued an inventory receipt marked "Hold for investigation and/or evidence" and not marked "Hold in Original Form;" (b) the inventory receipt was not marked as "narcotics related;" (c) their criminal charges have been resolved; (d) no forfeiture action was commenced against the money, and the time for such an action has expired."

(No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 5.)

tion to this release relates to "the non-narcotics due process class claims which may exist in the case of *Gates v. Towery* . . . for the period of March 23, 2002 through December 13, 2004 . . . to the extent such Class Members . . . do not file a Claim or receive proceeds from the [*Kennedy*] Settlement Fund." (*Id.*, Ex. 1 § 1.15.)

Because of the claim similarities between *Kennedy* and *Gates* as well as the time frame overlap between the *Kennedy* class and Plaintiffs' proposed "procedures" class, Defendants correctly point out that this *Kennedy* release would serve to preclude any claims by Plaintiffs' proposed class members who were arrested prior to October 16, 2009 for non-narcotics related offenses. However, because the Court is no longer considering certification a non-narcotics class, the settlement no longer has any preclusive effect on the proposed "procedures" class that contains only narcotics arrestees. *Kennedy* only dealt with non-narcotics arrests and so there can be no overlap with the narcotics arrests at issue here.

As a critical and related concern, the Court notes that there is the possibility for double recovery within *Gates* itself due to the overlapping time periods covered by the "notice" narcotics subclass and Plaintiffs' proposed "procedures" class. While neither party has addressed this issue in detail, the Court nevertheless finds that the supplemental class definition must include language to avoid this potential problem. Therefore, the "procedures" class definition will include the additional requirement that "[class members], at the time that the Settlement is finalized, are not members of the *Gates* Settlement Class laid out in the Stipulation and Agreement of Settlement, to be preliminarily approved by the Court on May 13, 2010."

## 2. Kennedy *Settlement Terms and Resulting Changes to City Policy*

In addition to the *Kennedy* Settlement release, Defendants also point to the changes the City made to its inventorying policies as a result of the *Kennedy* Settlement as evidence that the claims of the potential supplemental class members are not viable. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 7.) As part of the Settlement, the City agreed to implement both new notice and new procedure policies with regard to property taken from individuals upon their arrest. (*Id.*, Ex. 1 § 5.1; Ex. 4.) Specifically, the City has revised the notices provided to *all* arrestees, and has improved the procedures for the return of inventoried money for non-narcotics arrestees. The City is also working to implement future improvements for the return procedures for narcotics arrestees. (*Id.*) Defendants argue that these changes specifically address all issues that underlie the allegations of Plaintiffs' proposed supplemental class. (*Id.* at 7.)

The City's new non-narcotics procedures require the Chicago Police Department to obtain judicial approval before retaining an arrestee's money for longer than 30 days. (*Id.*, Ex. 1 § 5.2.) Additionally, the Police Department is directed to send the money to the arrestee's last known address if the property is not picked up within a 60 day time period after the property becomes available for release. (*Id.*, Ex. 1 § 5.3.) Plaintiffs do not dispute that these new procedures address all due process procedure concerns for non-narcotics arrestees, and Plaintiffs anticipate that the new narcotics procedures to be implemented by the City will similarly satisfy due process requirements. Thus, Plaintiffs agree that their supplemental "procedures" class must end on the date the

new City procedures are implemented. (No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot..at 6.). However, because the City has not yet implemented the new inventory return procedures for narcotics arrestees, the proposed "procedures" class property extends through the present. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 8; No. 522, Pls.' Reply to Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot..at 7.) This end date can be amended once the new narcotics procedures take effect.

A more contentious issue between the parties relates to the City's revised notices that were implemented as part of the *Kennedy* Settlement. These notices went into effect on October 16, 2009 and provide a full page of additional detailed instructions on the proper protocol for recovering inventoried property. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class, Ex. 1 § 5.1; No. 526, Defs.' Supplemental Resp. to Pls.' Supplemental Class Mot. at 4.) Defendants argue that because Plaintiffs have agreed that this new notice satisfies due process, it is impossible for members of the proposed class to establish a due process violation after October 16, 2009. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 9.) Plaintiffs, on the other hand, do not dispute that this revised inventory receipt satisfies due process *notice* constraints but still maintain that the City's return policies have violated the *procedural* requirements of due process up until implementation of the new City procedures. According to Plaintiffs, it "does not matter a whit whether the City's inventory receipts did or did not provide adequate notice … [i]f the procedures themselves were

unconstitutional." (No. 503, Pls.' Reply in Support of Pls.' Supplemental Class Mot. at 14-15.)

This dispute goes to the heart of Plaintiffs' procedural due process claims, and Defendants thus encourage this court to address the merits of Plaintiffs' claims at this time. However, we decline to do so. The Supreme Court has made clear that Rule 23 does not give a court the authority to conduct a preliminary inquiry into the merits of a suit to determine whether it can be maintained as a class action. *Eisen v. Carlisle*, 417 U.S. 156, 177 (1974). The Court explains that when "determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id*. at 178.

It is true that, as Defendants point out, the Seventh Circuit has clarified the *Eisen* standard and held that a judge must occasionally consider merit based issues when making class certification determinations. *Szabo v. Bridgeport* Machines, Inc., 249 F.3d 672, 676-77 (7th Cir. 2001). However, *Szabo* directs courts to consider the merits as necessary to determine whether Rule 23 is satisfied; it does not authorize a general assessment of the ultimate success of plaintiffs' claims. *Id*. The language of *Szabo* instructs a judge to "make whatever factual and legal inquiries are necessary *under Rule 23*." *Id*. at 676 (emphasis added). Judges should look behind the pleadings when necessary to ensure "actual, not presumed, conformance with Rule 23." *Id*. at 677. As further clarified in a recent opinion from the Northern District of Illinois:

> We do not believe that *Szabo* directs district courts to decide class certification questions based on a preliminary assessment of the ultimate merits of the plaintiffs' claims: to base class certification on a prediction of who will win the case would be at odds with *Eisen*. In our view, the "preliminary inquiry into the merits" discussed in *Szabo* is a more limited one, that has at its focus not the substantive strength or weakness of the plaintiffs' claims but rather the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23.

*Rahim v. Sheahan*, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001). Consequently, while a court is not required to take a plaintiff's word on class certification questions, neither is it permitted to deny certification of a class based on the likely success of a plaintiff's case.

In the case at hand, the Court is satisfied that Plaintiffs' proposed supplemental "procedures" class satisfies all necessary Rule 23 requirements. As such, we find it premature to determine whether the City's revised notice is sufficient to defeat Plaintiffs' due process "procedures" claims. The October 16, 2009 notice does not warrant the denial of Plaintiffs' current class certification motion.

## D. Discovery Issues

Defendants' final argument is that discovery is not complete because "several important things …have changed the landscape of this litigation since the appeal of [the District Court's] summary judgment ruling." (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 16.) Because the parties have been litigating based on a "notice" class, Defendants now claim that discovery related to "whatever procedures Plaintiffs put at issue" will be necessary if a "procedures" class is certified. (*Id.* at 16.) However, Plaintiffs have affirmatively stated that they do not anticipate re-

quiring any additional discovery, and, while Defendants have hypothetically posited that discovery may be necessary, they have not indicated a need for anything specific. (No. 503, Pls.' Reply in Support of Mot. To Certify a Supplemental Class at 5; No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class at 16.) Certainly, neither party has indicated that discovery is required in order to properly brief or argue the class certification issue now before the Court, and, should the parties deem additional discovery necessary, there will be ample time for such substantive discovery after the class is certified. While the Court does not doubt that "several important things" have changed since the District Court ruling in 2007 and that additional discovery may be necessary, this is not a valid reason to deny certification of a class that meets the requirements of Rule 23 and is not otherwise barred.

# IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion is granted as modified. The Court hereby certifies a supplemental "procedures" narcotics class that reflects both the exclusion of the claims of arrestees whose money was inventoried as evidence, as well as the preclusive effect of the previously certified *Gates* class on certain proposed class members. This "procedures" class is set forth as follows, with the Court's additions italicized:

> All those persons who had money taken from them upon their arrests by Chicago police officers for a narcotics related arrest from March 23, 2002 to the present provided: (a) an inventory receipt was issued to them for the cash that was seized; (b) the criminal charges that resulted in that arrest have been resolved in the trial court; (c) no forfeiture action was commenced against the seized money; (d) the time for filing a forfeiture action has expired; (e) *the money was not inventoried as evidence in any criminal investigation*; (f) the City of Chicago did not secure a court order to retain the property beyond the final resolution of the criminal charges; (g) the inventoried money, plus interest accruing from the date the criminal charges were resolved, has not been returned to the class member; and (h) they, *at the time that the Settlement is finalized, are not members of the* Gates *Settlement Class laid out in the Stipulation and Agreement of Settlement, to be preliminarily approved by the Court on May 13, 2010.*

E N T E R:

Dated: May 12, 2011

NAN R. NOLAN
United States Magistrate Judge