IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELTON GATES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 04 C 2155 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Elton Gates ("Gates") and Luster Nelson ("Nelson") (collectively, "Plaintiffs") initiated this class action lawsuit under 42 U.S.C. § 1983 against the City of Chicago ("the City") and Chicago Police Superintendent Philip J. Cline (collectively, "Defendants") challenging the constitutionality of the City's policies governing the inventorying and return of money seized from individuals upon their arrest by the Chicago Police Department.[1] (No. 1, Compl.; No. 192, Fifth Amended Compl.) Pursuant to 28 U.S.C. § 636(c), all parties have now consented to the jurisdiction of the United States Magistrate Judge in this matter. (No. 514, Joint Consent to Exercise of Jurisdiction of U.S. Magistrate Judge.) Currently before the Court is Defendants' motion for summary judgment on the procedural due process claims of the Supplemental Class certified by this Court on May 12, 2011. (No. 537, Defs.' Mot. for Summary Judgment at 1; No. 538, Defs.' Mem. in Support of Mot. for Summary

---

[1] Plaintiffs initially brought suit against several individual Chicago police officers as well. However, in 2007, the District Court granted the individual officer defendants' motion for summary judgment in its entirety. *Gates v. Towery*, 507 F. Supp. 2d 904, 908 (N.D. Ill. 2007).

04 C 2155

Judgment ("Defs.' Summary Judgment Mem.") at 1–4.) For the reasons set forth below, Defendants' motion is DENIED.

## I. BACKGROUND

Individuals arrested by the Chicago Police Department are often carrying small amounts of money on their persons, which is seized and inventoried by the officers at the time of the arrest. *See Gates v. City of Chicago*, 623 F.3d 389, 391 (7th Cir. 2010). The named Plaintiffs here were arrestees from whom police officers confiscated money, and they have challenged the sufficiency of both the procedures the City has in place for the return of their seized funds as well as the notice provided that describes those procedures. *Id.* This is the ninth opinion to be issued in this case, including six opinions from Judge Ruben Castillo in the Northern District of Illinois, two decisions handed down by the Seventh Circuit Court of Appeals, and one previous opinion from this Court. *See Gates v. Towery*, 331 F. Supp. 2d 666 (N.D. Ill. 2004) ("*Gates I*") (partially granting and partially denying Plaintiffs' motion to reconsider dismissal of their complaint); *Gates v. Towery*, No. 04 C 2155, 2004 WL 2583905 (N.D. Ill. Nov. 10, 2004) ("*Gates II*") (granting Plaintiffs' motion for class certification with modification), *aff'd*, 430 F.3d 429 (7th Cir. 2005) ("*Gates III*"); *Gates v. Towery*, 435 F. Supp. 2d 794 (N.D. Ill. 2006) ("*Gates IV*") (partially granting and partially denying Defendants' motion to dismiss); *Gates v. Towery*, 456 F. Supp. 2d 953 (N.D. Ill. 2006) ("*Gates V*") (redefining the certified class and partially granting Defendants' motion to dismiss); *Gates v. Towery*, 507 F. Supp. 2d 904 (N.D. Ill. 2007) ("*Gates VI*") (dismissing certain claims and granting summary judgment in favor of Defendants on remaining claims); *Gates v. City*

*of Chicago*, 623 F.3d 389 (7th Cir. 2010) ("*Gates VII*") (holding that Plaintiffs' restitution claims were properly dismissed as moot, but that the grant of summary judgment to Defendants on the due process "notice" and "procedures" issues was in error); *Gates v. City of Chicago*, 2011 WL 1811187 (N.D. Ill. May 12, 2011) ("*Gates VIII*") (granting Plaintiffs' motion for certification of a supplemental narcotics "procedures" class with modification). The complex factual background and extensive procedural history of this case have been detailed by the District Court, the Seventh Circuit, and this Court in past opinions and will only be recounted here as pertinent to the pending motion. *See, e.g., Gates V*, 456 F. Supp. 2d at 957–58; *Gates VII*, 623 F.3d at 391–94; *Gates VIII*, 2011 WL 1811187, at **1–2.

The District Court first certified a class in this case on November 9, 2004, pertaining to Plaintiffs' federal due process claims pursuant to the Fifth and Fourteenth Amendments.[2] *Gates II*, 2004 WL 2583905, at *9; (No. 192-2, Fifth Amended Compl. at 2, 6.) This class was affirmed by the Seventh Circuit in *Gates III*, 430 F.3d at 429, and subsequently divided into two subclasses by the District Court in *Gates V*, one for non-narcotics arrestees and one for narcotics arrestees. 456 F. Supp. 2d at 970. Plaintiff Gates was designated the representative of the non-narcotics subclass, and Plaintiff Nelson was assigned to represent the narcotics subclass. *Id.* at 968–70. These due process class definitions have remained unchanged since *Gates V* and are defined as follows:

---

[2] During the early stages of litigation, the District Court had also certified a conversion and replevin class under state law, but those claims have been dismissed or decertified in subsequent proceedings. *See Gates V*, 456 F. Supp. 2d at 970; *Gates VI*, 507 F. Supp. 2d at 924–25; (No. 442, Minute Entry, Feb. 8, 2008).

> A narcotics [or non-narcotics] class, composed of all those persons who, after March 23, 2002, and before December 14, 2004, had property taken from them upon their arrests by Chicago police officers provided: (a) the criminal charges against them have been resolved in the trial court; (b) no forfeiture action was commenced against the seized property; (c) the time for filing a forfeiture action has expired; (d) the property was not inventoried as evidence in any criminal investigation; (e) the arrestee was issued an inventory receipt when arrested indicating that the arrestee would be notified when the property was available for pick-up; (f) the arrestee never received notice that the property was ready for return; (g) the money has not been returned to the arrestee; and (h) the arrestee was [not] arrested for a narcotics offense.

*Id.* at 969–70.

In 2007, both Plaintiffs and Defendants moved for summary judgment, and in *Gates VI*, the District Court granted summary judgment to Defendants on the due process claims. 507 F. Supp. 2d at 907, 928. Plaintiffs appealed the *Gates VI* ruling, and in 2010, the Seventh Circuit held that summary judgment had been granted to Defendants in error. *Gates VII*, 623 F.3d at 413. In so holding, the court made clear that "meaningful notice" and "adequate procedures" are two separate and distinct due process questions and that Plaintiffs had adequately raised and preserved both issues. *Id.* at 404–05. The Seventh Circuit further concluded that the notice provided by the City "may be inadequate" and also that the "record was replete with factual disputes" regarding what the City actually requires of arrestees seeking return of their money. *Id.* at 405. The case was remanded to the District Court for further proceedings, and shortly thereafter, the parties consented to the jurisdiction of the United States Magistrate Judge. *Gates VII*, 623 F.3d at 413; (No. 514, Joint Consent to Exercise of Jurisdiction of U.S. Magistrate Judge).

During the three years that the summary judgment appeal was pending with the Seventh Circuit, the City did not remain idle. As part of the settlement of the related litigation, *Kennedy v. City of Chicago*, Case No. 06 C 4914 (N.D. Ill.), the City voluntarily agreed to implement both new notice and new procedure policies with regard to property taken from individuals upon their arrest. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class. Ex. 1 §5.1, Ex. 4; No. 538, Defs.' Summary Judgment Mem. at 3; No. 546, Pls.' Resp. to Defs.' Summary Judgment Mot. at 2.) Specifically, on October 16, 2009, the City revised the notices provided to *all* arrestees ("Revised Notice"), and on November 15, 2010, the City improved the procedures for the return of inventoried money for *non-narcotics* arrestees. (No. 497, Defs.' Resp. to Pls.' Mot. for Certification of a Supplemental Class. Ex. 1 §5.1, Ex. 4.) As a result of these highly commendable changes to City policy, the parties in this case have been able to reach a settlement that resolves all issues relating to non-narcotic arrestees as well as the bulk of the narcotic arrestee issues. (No. 542, Preliminary Approval Order, Ex. 1.) What remains are the claims of a subset of the Supplemental Class initially certified by this Court on May 12, 2011, to reflect the due process "procedures" issues identified and clarified by the Seventh Circuit in *Gates VII*. 2011 WL 1811187, at *15. This supplemental procedures class is currently defined as:

> All those persons who had money taken from them upon their arrests by Chicago police officers for a narcotics related arrest between March 23, 2002 and May 14, 2011 provided: (a) an inventory receipt was issued to them for the cash that was seized; (b) the criminal charges that resulted in that arrest have been resolved in the trial court; (c) no forfeiture action was commenced against the seized money; (d) the time for filing a forfeiture action has expired; (e) the money was not inventoried as evidence in any criminal investigation; (f) the City of Chicago did not

> secure a court order to retain the property beyond the final resolution of the criminal charges; (g) the inventoried money, plus interest accruing from the date the criminal charges were resolved, has not been returned to the class member; and (h) they, at the time that the Settlement is finalized, are not members of the Gates Settlement Class laid out in the Stipulation and Agreement of Settlement that was preliminarily approved by the Court on May 13, 2010.[3]

*Gates VIII*, 2011 WL 1811187, at *15; (No. 545, Minute Entry, June 16, 2011). Because the claims of individuals arrested for narcotics offenses prior to October 16, 2009, are included in the recent settlement, the group of arrestees with active claims actually consists only of those arrested for narcotics related offenses between October 16, 2009, and May 14, 2011. (No. 538, Defs.' Summary Judgment Mem. at 1; No. 546, Pls.' Resp. to Defs.' Summary Judgment Mot. at 2–3.) In their current motion for summary judgment, Defendants argue that the Revised Notice implemented on October 16, 2009, satisfies all due process concerns raised by the Seventh Circuit in *Gates VII* and mandates a resolution of the remaining procedural due process issues in their favor. (*See generally* No. 538, Defs.' Summary Judgment Mem.) For their part, Plaintiffs do not dispute Defendants' assertions that the Revised Notice satisfies due process *notice* requirements. (Stipulation and Agreement of Settlement, *Kennedy v. City of Chicago*, No. 06 C 4914, Docket No. 251-1, §5.1.) However, they contest the claim that a change

---

[3] As originally certified, the class period for the supplemental class was defined as March 23, 2002, through the present time. *Gates VIII*, 2011 WL 1811187, at *15. However, after the certification, the City implemented additional remedial measures that affect the inventorying and return of money taken from individuals arrested for narcotics related offenses. (*See* No. 536, Notice of Compliance with Section 5.5 of the Stipulation and Agreement of Settlement at 1, Ex. A at 6, Ex. B at 2.) The Defendants subsequently asked the Court to change the end date of the class period to May 14, 2011, the day these new policies went into effect. (*Id.* at 1.) As Plaintiffs had no objection, the Court granted Defendants' request. (No. 545, Minute Entry, June 16, 2011.)

in notice is sufficient to cure the deficiencies identified in the City's inventory return *procedures*. (No. 546, Pls.' Resp. to Defs.' Summary Judgment Mot. at 2–3.) It is with this record that the Court resolves Defendants' motion.

## II. LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment will always bear the initial burden of proving the absence of genuine issues of material fact." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 496 (7th Cir. 2011). Such a genuine issue exists when, after viewing all the evidence in the light most favorable to the non-moving party, the court determines that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Nat. Athletic Sportswear, Inc. v. Westfield, Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "In other words, [for summary judgment to be appropriate,] the record must reveal that no reasonable jury could find for the nonmoving party." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006) (quoting *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994)). The court's role is not to evaluate the weight of the evidence, judge the credibility of witnesses, or determine the truth of the matter; a court merely determines whether there is a genuine issue of triable fact. *Nat. Athletic Sportswear*, 528 F.3d at 512 (citing *Anderson*, 477 U.S. at 255).

### III. ANALYSIS

Constitutional due process provides that individuals whose property interests are at stake due to governmental actions "are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). The right to be heard "must be granted at a meaningful time and in a meaningful manner[,]" *id.*, and thus the "core of due process" has two parts: "the right to notice" and "a meaningful opportunity to be heard," *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

Applied to the case at hand, due process requires that Defendants provide both sufficient notice of the process for reclaiming seized money as well as *procedures* adequately designed to allow arrestees to collect the money that belongs to them. *See Gates VII*, 623 F.3d at 394, 405; *see also McKenzie v. City of Chicago*, 1999 WL 412614, at **1–2 (N.D. Ill. May 28, 1999) (due process challenge to the City's Fast Track Demolition program questioning the *notice* provided to property owners and the *procedures* in place to protect property interests as the two prongs of the due process inquiry). Defendants currently seek summary judgment on the due process claims of the Supplemental Class because they maintain that the October 1999 Revised Notice resolved both the notice *and* procedure due process concerns. (*See generally* No. 538, Defs.' Summary Judgment Mem.) Specifically, Defendants contend that the Revised Notice addresses all due process concerns identified by the Seventh Circuit in *Gates VII* and meets all due process requirements set forth in two key Supreme Court cases, *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978), and *City of West*

*Covina v. Perkins*, 525 U.S. 234 (1999). (No. 538, Defs.' Summary Judgment Mem. at 2.) Further, the City contends that Plaintiffs have not presented any evidence of a genuine issue of material fact relating to the City's money return procedures during the relevant time period. *(Id.* at 2–3, 5–6.) As a result, Defendants believe that both the law and the facts dictate judgment in their favor. However, because notice and procedure must be treated as two separate due process questions, and because the Court finds that the record includes disputed material facts, the Court must deny Defendants' Motion for Summary Judgment.

**A. Background on the Revised Notice**

Illinois law entitles arrestees to an inventory of the items seized from them. See 725 ILCS 5/108 *et seq*. At the time the Seventh Circuit was considering the case in *Gates VII*, the City fulfilled this requirement by physically handing all arrestees, both for narcotics and non-narcotics offenses, an inventory receipt itemizing the property that was taken. *Gates VII*, 623 F.3d at 391 n.2, 395. The receipt provided to arrestees also included a "Notice to Property Owner or Claimant" ("Original Notice") that purported to describe what arrestees must do in order to reclaim their property. *Id*. at 395. It was this Original Notice that the Seventh Circuit found potentially problematic pursuant to established due process notice requirements. *Id*. at 401.

The Seventh Circuit first determined that because the City did not provide a publically available statement of its process for the return of arrestees' money, Defendants were not entitled to the lenient due process notice requirements laid down by the Supreme Court in *West Covina*. *Gates VII*, 623 F.3d at 399; *West Covina*, 525

U.S. at 241–42 (holding that individualized notice of the procedures in place for protecting property rights is not required when those procedures are set forth in documents generally available to the public such as in statutes or case law). Therefore, the Original Notice was bound by the stricter due process notice standards established in *Memphis Light* requiring individual notification of the general contours of the relevant property return procedures. *Gates VII*, 623 F.3d at 398–99; *Memphis Light*, 436 U.S. at 13–15. The Seventh Circuit then went on to identify specific aspects of the Original Notice that presented potential due process problems. *Gates VII*, 623 F.3d at 399–401. Critically, the court determined that not only did the Original Notice contain language that "lull[ed]" the recipient into passively waiting for an official notice that never came, but also that it realistically provided "no clue as to what additional steps [an arrestee] must take in order to reclaim his property." *Id.* at 395, 401. The Seventh Circuit thus concluded that, at the very least, a triable issue of fact existed as to whether the Original Notice violated due process. *Id.* at 401.

In the current motion, Defendants contend that the October 2009 changes to the notice provided to arrestees resolve *all* due process notice concerns. Because the City has made the Revised Notice available on a publically accessible website, Defendants argue that the Notice now qualifies for the less exacting due process inquiry under *West Covina*. (No. 538, Defs.' Summary Judgment Mem. at 2, 6.) Further, as the Revised Notice now contains a full page of detailed instructions describing a simplified protocol for property recovery, Defendants believe that it *not only* easily meets the *West Covina* requirements, but also that it even addresses all due process notice concerns

04 C 2155                                                                                                      10

identified by the Seventh Circuit under the stricter *Memphis Light* standard. (*Id.* at 2, 6–8, 12)

For their part, Plaintiffs do not question the sufficiency of the Revised Notice when it comes to the notice prong of the due process inquiry. (Stipulation and Agreement of Settlement, *Kennedy v. City of Chicago*, No. 06 C 4914, Docket No. 251-1, §5.1.) As a result, there is no need for this Court to address the issue; any and all disputes involving the notice requirement of constitutional due process have been resolved and are no longer before the Court. What remains for the Court to consider are Defendants' assertions that the Revised Notice solved all due process *procedure* issues raised by the Supplemental Class such that no genuine issue of material fact remains in the aftermath of the Revised Notice.

**B. The Legal Effects of the Revised Notice**

The Court first notes that notice and procedure constitute "two distinct components" of due process, *McKenzie*, 1999 WL 412614 at **1–2, and Defendants' attempts to conflate the two are unavailing. Indeed, the three primary cases on which Defendants base their "notice fixes procedure" argument, namely *Gates VII*, *Memphis Light*, and *West Covina*, all clearly indicate that notice and procedure are to be considered separately. In *Gates VII*, for example, the Seventh Circuit identified two *distinct* elements of Plaintiffs' argument: (1) that "the City did not provide meaningful notice of its inventory and property return procedures[;]" and (2) that "the City failed to provide adequate procedures for the return of [arrestees'] money." *Gates VII*, 623 F.3d at 394. The *Gates VII* court made clear that "meaningful notice" and "adequate

procedures" are two separate and distinct due process questions and accordingly assessed the two aspects of due process in completely separate sections. *Id.* at 394–95 ("We begin with the issue of meaningful notice."); *id.* at 404–05 ("We have already concluded that notice of the procedures for reclaiming seized money may be inadequate and that the district court was premature in granting summary judgment in favor of the City on that point. We now consider whether the process itself was adequate to satisfy the Constitution.").

In *Memphis Light*, the Supreme Court similarly divided its analysis regarding due process notice and due process procedure into two separate sections, 436 U.S. at 12–22, and in *West Covina*, the two issues were treated so distinctly that the procedures issue was not even before the Court, 525 U.S. at 238–40. The *West Covina* parties had challenged the Ninth Circuit's due process conclusions as to notice but not as to procedures/remedies, and as a result, the entire Supreme Court opinion was confined to due process notice issues. *Id.* Therefore, Defendants' extensive citations to *West Covina* and the due process notice sections of cases such as *Gates VII* and *Memphis Light* cannot dictate the proper resolution of the due process procedure issue currently before the Court.[4]

It is of course true that the two prongs of due process are necessarily related, and an analysis of notice may sometimes overlap with an assessment of procedure.

---

[4] Defendants also cite to *Reams v. Irvin*, 561 F.3d 1258 (11th Cir. 2009), and *Pascarella v. Swift Trans. Co.*, 643 F. Supp. 2d 639 (D. N.J. 2009), in support of their position that the Revised Notice resolves the due process procedure claims of the Supplemental Class. (No. 538, Defs.' Summary Judgment Mem. at 10.) However, the cited sections of these cases deal solely with the sufficiency of the notice provided to plaintiffs in each case. As there are no due process notice issues before this Court, these citations do not advance Defendants' argument.

However, the majority of the Seventh Circuit's due process procedure concerns in *Gates VII* had little or nothing to do with the Original Notice. For example, the Seventh Circuit identified a potential due process problem with the fact that some arrestees were required to affirmatively seek out and obtain a court order in order to reclaim their own property, *Gates VII*, 623 F.3d at 411. That protocol had nothing to do with notice. Similarly, the court expressed a purely procedure based concern with the fact that many arrestees were told that in order to retrieve their money, they had to present an official form signed by their arresting officers, a form which often presented nearly insurmountable procedural obstacles to obtain. *Id.* at 411–12. Ultimately, the Seventh Circuit was concerned that the City had improperly shifted an administrative burden and explained that "it would seem that an arrestee is entitled to his money at the conclusion of the criminal case[.]" *Id.* at 411. This identified problem has everything to do with the "behind the scenes" process actually used by the City to return money, but very little to with the words written on the notice handed to arrestees at the time their money was taken; in other words, it is a procedure issue, *not* a notice issue.

Defendants attempt to address this dilemma by pointing out that (1) the Revised Notice makes no mention of court orders or official signed forms, and (2) Plaintiffs did not provide any evidence that the City "operates differently than the procedures set forth in the Revised Notice." (No. 556, Defs.' Summ. Judg. Reply at 5.) Yet while both of these contentions are undoubtedly true, neither entitles Defendants to summary judgment. What the Revised Notice says on its face is a different issue than what was

04 C 2155 13

actually going on behind the scenes. Simply because the notice does not mention the need for forms or court orders does not mean that they were not still required. In fact, the Original Notice did not include any information at all about court orders, but they were often required nonetheless. (No. 538, Defs.' Summ. Judg. Mem. Ex. B); *Gates VII*, 623 F.3d at 411. The revisions the City made to the notice, while certainly positive, do nothing on their own to cure the potential due process procedure concerns identified in *Gates VII*.

The ultimate problem with Defendants' position is that there is simply no new evidence in the record relating to the money reclamation procedures for the Supplemental Class outside of what was before the Seventh Circuit in *Gates VII*. Thus, material facts remain in dispute, especially given that all evidence must be viewed in the light most favorable to Plaintiffs as the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Nat. Athletic Sportswear, Inc. v. Westfield, Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

For Defendants to be entitled to summary judgment, "the record must reveal that no reasonable jury could find for the nonmoving party." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006). However, the Seventh Circuit already determined that the record before it did *not* support summary judgment for Defendants. *Gates VII*, 623 F.3d at 413. In fact, the evidence convinced the Seventh Circuit that there might be significant procedural problems with the City's inventory return policies. *See id.* at 405–12. As a result, to be successful with their current motion, Defendants had the burden of supplementing the record with evidence of

procedure improvements *relevant to the Supplemental Class members*. But while the record is full of new information about *notice* revisions, and there is documentation of a 2010 procedural change relating to *non*-narcotics arrestees, the record lacks any information about changes to the inventory return procedures for the class of individuals subject to the current motion, namely those arrested for narcotics offenses between October 16, 2009, and May 14, 2011. Until the City informed this Court that it had implemented remedial measures affecting narcotics arrestees in May 2011, there had been no new information dealing with narcotic arrestee procedures at all.[5] (*See* No. 536, Notice of Compliance with Section 5.5 of the Stipulation and Agreement of Settlement.)

As a result of this undeveloped record, there is simply no evidence concerning what was actually required of narcotics arrestees trying to reclaim their seized funds during the class period. Plaintiffs presented evidence to the Seventh Circuit of a potentially improper administrative burden shift; Defendants now contend that all of the Seventh Circuit's due process concerns have been addressed, but the Court cannot simply take Defendants' word for it. It is Defendants' motion, and they bear the initial burden to

---

[5] The one notable exception relates to narcotics arrestees who had $1,000 or more seized from their person at the time of their arrest. For that small subset of the Supplemental Class, Defendants' have provided evidence, uncontroverted by Plaintiffs, that the Chicago Police Department undertakes a "heightened investigatory procedure" aimed at locating the arrestees. (No. 538, Defs.' Summ. Judg. Mem. at 12–14.) However, the point of this "heightened" procedure is not to expedite property return to arrestees but rather "to make personal contact with the arrestee and interview him or her regarding the source of the seized currency." (*Id*. at 13.) As such, the heightened procedures include steps to track down arrestees and acquire information regarding the ownership of seized funds, but do not actually alter the inventory return procedures in any way. (*See id*. at 12–14.) Police officers may have a better sense of where these individuals arrested with over $1000 are located, but that does not help the Court assess what steps these arrestees had to take in order to reclaim their money. Therefore, this additional information does not change the Court's analysis.

support their position with evidence such that a reasonable jury could not return a verdict for Plaintiffs. *Seng-Tiong Ho*, 648 F.3d at 496; *Nat. Athletic Sportswear, Inc.*, 528 F.3d at 512 ; *Keri*, 458 F.3d 620, 627. Defendants have not done so, and as a result, the record includes genuine issues of material facts.

Specifically, there is no evidence in the record to demonstrate (i) that Supplemental Class members did not have "difficulty following the procedure described in detail in the Revised Notice;" (ii) that Supplemental Class members were not required "to produce additional or different information" than that indicated on the Revised Notice; and (iii) that the "information contained in the Revised Notice . . . accurately reflect[s] the actual policy." (*See* No. 556, Defs.' Summ. Judg. Reply at 6.) These disputed facts are critical to determining whether the City's inventory return procedures comply with due process. Summary judgment cannot be granted in the face of these "genuine issues of triable fact." *Nat. Athletic Sportswear, Inc.*, 528 F.3d at 512. While the Revised Notice may accurately reflect the procedures applied to the Supplemental Class, the Court cannot find for Defendants based on the content of the Revised Notice alone.[6]

---

[6] Along with the Revised Notice discussed above that is provided to both narcotics and non-narcotics arrestees, narcotics arrestees receive an additional form of notice. By virtue of a consent decree entered in a previous lawsuit between an arrestee and the City, narcotics arrestees are entitled to a Claims Letter informing them of the procedure to follow to reclaim their seized property. *Gates VII*, 623 F.3d at 395; *Pollard v. Daley*, 1989 WL 152394, **3, 7 (N.D. Ill. Dec. 4, 1989). This "*Pollard* Notice" must be mailed to arrestees within ninety days of their arrest, and pursuant to its terms, arrestees can retrieve their money by presenting the *Pollard* Notice and valid photo identification at the City's Evidence and Recovered Property Section during business hours. *Id.* Both parties are in agreement that, whatever other documentation may or may not be required for property reclamation, the presentment of a *Pollard* Notice is always necessary for narcotics arrestees to retain their seized funds.

The Seventh Circuit expressed a due process concern with the process the City used to mail the *Pollard* Notice to narcotics arrestees. *Gates VII*, 623 F.3d at 401–04. The court explained that due process does not require that the *Pollard* Notice actually reach the target arrestee as

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED. However, nothing in this opinion is intended to minimize the commendable work that the City has done, and continues to do, to ensure that arrestees' constitutional rights are protected. This decision merely reflects the undeveloped state of the record relating to the inventory return procedures applied to the Supplemental Class. As a result of these open questions, the Court must conclude that there are genuine issues of material fact remaining in this case.

E N T E R:

Dated: November 29, 2011

NAN R. NOLAN
United States Magistrate Judge

---

long as it is reasonably calculated to do so. *Id.* at 401–02 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Nevertheless, the *Gates VII* court could not "say that mailing only to the address given at the time of arrest is adequate for due process purposes" when the City is aware that a number of arrestees are in jail at the time the *Pollard* Notice is mailed out and will therefore not be at home to receive the critical document. *Id.* at 403.

This due process concern was identified as a notice issue by the Seventh Circuit, and viewed as such, it is of course not relevant to the procedure issues currently before the Court. However, because the *Pollard* Notice must actually be physically presented by narcotics arrestees as part of the process of reclaiming their money, there is certainly a procedural element to the due process questions about the *Pollard* Notice, and this Court would be remiss to not at least identify the issue. Further analysis is not necessary, however, because the Court has already determined that there are open questions regarding other aspects of the procedure for seized property reclamation. As such, even if this Court agreed with Defendants' contention that the additional information provided on the Revised Notice resolved any issues in the mailing process for *Pollard* Notices, Defendants would still not be entitled to summary judgment.